COLORADO COURT OF APPEALS                                    **2017COA27**

---

Court of Appeals No. 15CA1306
Arapahoe County District Court No. 14CR2503
Honorable John R. Lowenbach, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Robert Newell,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE RICHMAN
Harris and Plank*, JJ., concur

Announced March 9, 2017

---

Cynthia H. Coffman, Attorney General, Patrick A. Withers, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Julia Chamberlin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     Defendant, John Robert Newell, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault with a deadly weapon. The district court denied defendant's request for a self-defense instruction because the court found that he had not provided evidence that he was not the initial aggressor. We conclude that the district court erred by placing a burden on defendant to offer direct evidence that he was not the initial aggressor before allowing the jury to be instructed on self-defense, and we therefore reverse his conviction and remand for a new trial.

## I. Background

¶ 2     Defendant shared an apartment with his girlfriend, Chantel McDowell, and his cousin, Eric Albert, who had been staying at the apartment for a couple of weeks. Defendant and Albert had an altercation, during which defendant cut Albert's back with a straight-edge barber razor, causing a wound near his shoulder blade which required twelve stitches.[1] Defendant was charged with

---

[1] McDowell referred to the weapon as a "switchblade," and a detective referred to the weapon as a "cut-throat razor," but it was undisputed that the weapon came from defendant's barber school

second degree assault, a class 4 felony, and a violent crime sentence enhancer.

¶ 3        There were three eyewitnesses to the altercation: defendant, McDowell, and Albert.  Of these, only McDowell and Albert testified at trial.

¶ 4        As relevant here, McDowell, who said that her relationship with defendant was strained at the time of the incident, testified that after having taken muscle relaxers and gone to bed early, she awoke when she heard defendant screaming, "get the fuck out of my house."  She said that she entered the living room, where the two men were yelling at each other.  On direct examination, she said that "at some point" she saw scissors in Albert's hand, but could not recall exactly when in the sequence of events she saw the scissors.

¶ 5        On cross-examination, she acknowledged that shortly after the incident, she told investigating Officer Anthony Green that as she came out of the bedroom, she saw defendant holding the razor and

---

kit, and an exhibit admitted at trial confirmed that the weapon was a straight-edge razor.

Albert holding a pair of orange-handled scissors.[2]  She testified that

when she made that statement to Officer Green, the events were

"fresh in [her] mind," and because she had just seen what had

happened, it was "more likely to be what [she] actually saw."

Officer Green confirmed that she reported seeing Albert with

scissors when she entered the living room.

¶ 6      McDowell reported that defendant and Albert were standing

near the front door when she exited the bedroom, and that Albert's

back was toward the door, with nothing preventing his exit.  She

also testified that she later saw Albert cross the room, pick up a

suede-backed dining room chair, and throw it toward defendant,

who remained near the front door.  Albert also testified that he

threw a chair at defendant.

¶ 7      McDowell stated that the men began scuffling, and she went to

the bedroom to call 911.  During the 911 call, she reported that

there were no injuries, yet minutes later realized that Albert had

been cut.  At trial, she testified that she had not seen when Albert

---

[2] Officer Green testified that he measured the scissors and that the
scissors had four-inch blades.

was cut, and also confirmed that she had told Officer Green that defendant had slashed at Albert when Albert picked up the chair.

¶ 8    Albert offered inconsistent testimony about when he was cut. He testified that he was cut while on his hands and knees by the front door, before he threw the chair, but he also testified that he did not feel anything and that he did not know he was cut at the time.

¶ 9    McDowell admitted that she did not see the beginning of the argument and testified that she did not see Albert do anything that might have injured defendant's face.

¶ 10    Albert testified that the fight began when he asked defendant to turn off the light. After that, defendant "was up in [Albert's] face and then [they] got to scuffling," and then defendant hit him in the forehead. Albert testified that he never touched defendant, and that he had not been holding scissors.

¶ 11    Officer Cody Jones testified that when defendant was arrested, he had a cut near his right eye. Officer Jones took photos of defendant's face shortly after the altercation because defendant "said that his face started to hurt." One photo was admitted at

trial. Two additional photos of defendant's cut, taken two days after the altercation, were also admitted.

## II. Procedural Background

¶ 12 Defendant's theory of the case was that he had inflicted the injury to Albert in self-defense — that Albert had cut his face with the scissors before McDowell entered the room and that he then slashed at Albert because Albert had picked up a chair.

¶ 13 During voir dire, prospective jurors were questioned at length about their ability to apply the law with respect to a claim of self-defense. Both the prosecution and defendant referenced self-defense arguments at the opening of trial. And based on the evidence adduced at trial, summarized above, and the inference that Albert cut defendant's face with his scissors, defendant requested a jury instruction on self-defense. Defendant reiterated this request multiple times.

¶ 14 The prosecution argued that defendant had not produced a "scintilla of evidence" that he was not the initial aggressor because the only direct evidence of initial aggression was Albert's testimony, which pointed to defendant. And because defendant had produced no direct evidence that Albert had touched him, he was not entitled

to a self-defense instruction. The prosecutor further argued that not being an initial aggressor is an element of self-defense and that defendant must show that he was not the initial aggressor.

¶ 15 Referring to the model jury instructions for self-defense, the district court found some evidence for elements (1) and (2) — that defendant used physical force in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force, and that he used a degree of force which he reasonably believed to be necessary. *See* COLJI-Crim. H:11 (2016). But because the court found not "even a scintilla of evidence" that defendant did not provoke an unlawful use of force by Albert or that defendant was not the initial aggressor — which it considered to be elements (3) and (4) — it refused to give the self-defense instruction. *See id.*

¶ 16 The jury found defendant guilty of second degree assault, acting upon a provoked and sudden heat of passion, which reduced the offense to a class 6 felony. The district court sentenced defendant to the custody of the Department of Corrections for a term of three years.

## III. Discussion

¶ 17    On appeal, defendant contends that the district court (1) erred when it failed to give the jury a self-defense instruction and (2) abused its discretion by prohibiting elicitation of evidence that defendant knew about Albert's prior violent act.  We agree with defendant's first contention, and we address the second only to the extent that it might arise on remand.

### A. Self-Defense Instruction

¶ 18    Defendant argues that (1) the record contained, and the district court recognized, sufficient evidence to warrant a self-defense instruction; (2) he was not required to present evidence refuting the initial aggressor exception; and (3) the district court's failure to give the instruction violated his constitutional right to due process.  The People argue that no credible evidence supported giving the instruction.  We conclude that on appeal, as at trial, the People assert a higher standard than the law prescribes for the jury to be instructed on self-defense.

#### 1. Standard of Review and Applicable Law

¶ 19    We review de novo whether sufficient evidence supports a self-defense jury instruction.  *People v. Garcia,* 113 P.3d 775, 784

(Colo. 2005). When considering an affirmative defense instruction, we consider the evidence in the light most favorable to the defendant. *Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004). Because defendant requested the instruction, any error in failing to give the instruction requires reversal unless the error did not affect defendant's substantial rights. *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001).

¶ 20 If there is any evidence in the record to support the theory that a defendant acted in self-defense, the defendant is entitled to an instruction, and a court's refusal to give one deprives the accused of his or her constitutional right to a trial by a jury. *Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991); *People v. Janes*, 962 P.2d 315, 319 (Colo. App. 1998), *aff'd*, 982 P.2d 300 (Colo. 1999).

¶ 21 While an affirmative defense requires a defendant to "present some credible evidence on that issue," § 18-1-407(1), C.R.S. 2016, this means just a "scintilla of evidence," that is, some evidence when viewed most favorably to the defendant that could support a jury finding in his favor, *People v. Saavedra-Rodriguez*, 971 P.2d 223, 228 (Colo. 1998). The small quantum of evidence that must appear in the record in order to warrant an instruction on an

affirmative defense may come from any source, even from the prosecution. *People v. Whatley*, 10 P.3d 668, 670 (Colo. App. 2000).

¶ 22     A defendant is entitled to an affirmative defense instruction embodying his theory of the case "if the record contains any evidence to support the theory, even if the supporting evidence consists only of highly improbable testimony by the defendant." *Garcia*, 28 P.3d at 347.

¶ 23     The affirmative defense of self-defense is codified in the first subsection of section 18-1-704, C.R.S. 2016. *Idrogo*, 818 P.2d at 754. That statute provides, in relevant part, that

> (1) . . . a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

§ 18-1-704(1).

¶ 24     Section 18-1-704 also provides exceptions. Using physical force in self-defense is not justified when the defendant is the initial aggressor and did not effectively withdraw from the encounter before applying the force used in self-defense. § 18-1-704(3)(b).

¶ 25    When a trial court is presented with some evidence that a defendant used force in self-defense, and some evidence that the defendant is the initial aggressor, the court should instruct the jury on both self-defense and the initial aggressor exception. *See People v. Roadcap*, 78 P.3d 1108, 1113 (Colo. App. 2003); *see also People v. Griffin*, 224 P.3d 292, 300 (Colo. App. 2009) (where there was evidence that the victim threatened the defendant before reaching into his truck and evidence that the defendant shot him in the back, the trial court did not err in giving both instructions); *People v. Montoya*, 928 P.2d 781, 784 (Colo. App. 1996) (where there was evidence that the defendant shot at a car and evidence that the victim was acting in concert with the driver when later following defendant into an alley, the trial court did not err in giving both instructions). It is then the prosecution's burden to prove beyond a reasonable doubt that defendant's conduct was not authorized as self-defense; the prosecution may meet that burden by proving that the defendant was the initial aggressor. *See* COLJI-Crim. H:11 (2016).

## 2. Analysis

¶ 26    We conclude that the evidence received at trial, summarized in Part I, although conflicting, was sufficient to entitle defendant to a self-defense jury instruction. The evidence that (1) McDowell saw Albert holding a pair of scissors; (2) defendant had a cut on his face which could be consistent with a cut from a pair of scissors; (3) no witness could explain how defendant was injured; (4) Albert "scuffled" with defendant; and (5) Albert threw a chair at defendant could permit a trier of fact to conclude that defendant acted in self-defense.

¶ 27    Though Albert testified that defendant was the initial aggressor, and no witness testified to the contrary, defendant need not disprove that he was the initial aggressor in order to benefit from a self-defense instruction when any evidence — even slight, unreasonable, or improbable evidence — supports his theory of self-defense. *People v. Dillon*, 655 P.2d 841, 845 (Colo. 1982) ("The general rule in Colorado is that an instruction embodying the defendant's theory of the case must be given if there is any evidence in the record to support it . . . no matter how improbable or unreasonable defendant's theory is."). Instead, it is the

prosecution's burden to prove an exception to self-defense. *See People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011) (If the evidence at trial raises the issue of an affirmative defense, "the affirmative defense effectively becomes an additional element, and the [district] court must instruct the jury that the prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable.").

¶ 28    It is for the jury, not the judge, to decide which witnesses and even which version of the witnesses' testimony is to be believed. *See People v. Barker*, 189 Colo. 148, 149, 538 P.2d 109, 110 (1975) ("It is axiomatic that the jury is the sole judge of the credibility of the witnesses."); *see also People v. Ramirez*, 30 P.3d 807, 808-09 (Colo. App. 2001) (a limitation on a judge's power "is premised on the basic principle that the jury should decide the difficult questions of witness credibility and the weight to be given to conflicting evidence"). Once the defendant offers a scintilla of evidence of self-defense, and the prosecution has offered evidence that the defendant was the initial aggressor, the jury should be provided with the self-defense instruction, including the initial

aggressor exception, and be permitted to weigh the evidence to decide whether self-defense has been disproved.

¶ 29   We are not persuaded by the People's argument that the evidence here supporting a self-defense instruction is "mere speculation" equivalent to "no evidence." Circumstantial evidence, such as the evidence here, is "some evidence" from which a jury could infer that Albert was the initial aggressor. Moreover, this case is unlike *People v. Schliesser*, where the defendant admitted to striking the first blow and provided no justification. 671 P.2d 993, 994-95 (Colo. App. 1983). Here, the district court itself found some evidence for the affirmative defense of self-defense as codified in section 18-1-704 and mirrored in the model jury instructions. *See Idrogo*, 818 P.2d at 754; COLJI-Crim. H:11 (2016). And because the court found some evidence, it should have given the jury an instruction on self-defense.

¶ 30   Because the district court failed to properly instruct the jury on the applicable law of self-defense, the prosecution did not bear the burden of disproving self-defense, and defendant was deprived of his right to acquittal on that ground. *See Idrogo*, 818 P.2d at 756. Accordingly, the error was not harmless and we must reverse.

*See People v. DeGreat*, 2015 COA 101, ¶ 18 (the trial court's refusal to give a self-defense instruction lowered the prosecution's burden of proof and was not harmless) (*cert. granted* Aug. 1, 2016).

¶ 31    We conclude that a self-defense instruction should be given when there is any evidence — including circumstantial evidence — that a defendant acted in self-defense. The defendant need not provide direct evidence that he was not the initial aggressor. Instead, the language of the initial aggressor exception should be given in the self-defense instruction when the prosecution points to some evidence that the defendant was the initial aggressor. The jury can then decide if the prosecution met its burden of proof.

### B. Evidence That Defendant Knew of Prior Violent Act

¶ 32    Albert had been convicted of a violent crime — armed robbery — approximately thirty-seven years before the altercation, and the district court allowed defendant to admit that evidence for impeachment purposes. Defendant then attempted to elicit evidence from Albert that defendant knew about Albert's conviction, in order to bolster his self-defense argument by showing that defendant had a reasonable belief that Albert would imminently use unlawful force against him, but the court would not allow it.

14

¶ 33    Defendant argues on appeal that this ruling violated his right to confront and cross-examine a witness and to present a meaningful defense. Because this issue is only relevant in the context of an affirmative defense of self-defense, which was not permitted in this case, we need not resolve the issue.

¶ 34    Insofar as the issue may arise on remand, we offer the following guidance: whether an act of violence or defendant's discovery of such act is "too remote to create . . . an apprehension or fear sufficient to justify the force used by defendant . . . is a matter committed to the sound discretion of the trial court." *People v. Vasquez,* 148 P.3d 326, 331 (Colo. App. 2006).

## IV. Conclusion

¶ 35    Because we conclude that defendant was entitled to a self-defense jury instruction, we reverse and remand for a new trial on second degree assault, acting upon a provoked and sudden heat of passion, a class 6 felony.

JUDGE HARRIS and JUDGE PLANK concur.