The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 28, 2022

## 2022COA84

**No. 20CA1339, People v. Whiteaker — Constitutional Law —
Fifth Amendment — Double Jeopardy — Presumption of
Innocence; Crimes — Second Degree Burglary — First Degree
Criminal Trespass; Criminal Law — Prosecution of Multiple
Counts for Same Act — Lesser Included Offenses — Jury
Instructions**

A division of the court of appeals considers whether the trial

court violated the defendant's right against double jeopardy by not

merging her conviction for first degree criminal trespass into her

conviction for second degree burglary.  The division holds that,

under the express language of *People v. Garcia*, 940 P.2d 357, 362

(Colo. 1997), a conviction for first degree criminal trespass does not

merge into a conviction for second degree burglary.  The division

acknowledges that later supreme court decisions have called

*Garcia*'s reasoning into question but concludes that it must adhere

to *Garcia* because the supreme court never expressly overruled that

decision. The special concurrence would hold that *Garcia* is not directly controlling because it was explicitly decided under the prior version of the strict elements test. Under the now-controlling replacement test articulated in *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 51-53, 64, 390 P.3d 816, 824, 826, the special concurrence would conclude that first degree criminal trespass is a lesser included offense of second degree burglary.

The division also considers, as an issue of first impression, whether a defendant in a criminal case is entitled to be referred to by name, rather than as the defendant, in the jury instructions. The division holds that the trial court did not err by declining the defendant's request to be referred to by name.

COLORADO COURT OF APPEALS **2022COA84**

Court of Appeals No. 20CA1339
Adams County District Court No. 19CR1036
Honorable Caryn A. Datz, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Taunia Marie Whiteaker,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Graham*, J., concurs
Kuhn, J., specially concurs

Announced July 28, 2022

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1    A court may not punish a criminal defendant twice for the same offense: "The Double Jeopardy Clauses of the United States and Colorado Constitutions provide that an accused shall not be twice placed in jeopardy for the same offense." *Reyna-Abarca v. People*, 2017 CO 15, ¶ 49, 390 P.3d 816, 824 (first citing U.S. Const. amends. V, XIV; and then citing Colo. Const. art. II, § 18). An accused is protected "not only from facing a second trial for the same offense but also from suffering multiple punishments for the same offense." *Id.*

¶ 2    The merger doctrine, like the double jeopardy doctrine, generally seeks to "protect[] against punishing one criminal act twice." *People v. Henderson*, 810 P.2d 1058, 1060 (Colo. 1991); *cf. People v. Leske*, 957 P.2d 1030, 1035 (Colo. 1998) (holding that, for purposes of double jeopardy and merger, a defendant may be "subjected to multiple punishments based upon the same criminal conduct" but only if the General Assembly "specifically authorized" the punishments). "Merger is an aspect of double jeopardy. Double jeopardy applies to subsequent prosecutions; merger applies to the concept of multiple punishment when multiple charges are brought

in a single prosecution." *Henderson*, 810 P.2d at 1060 (quoting *State v. Gammil*, 769 P.2d 1299, 1300 (N.M. Ct. App. 1989)).

¶ 3 In this case, Taunia Marie Whiteaker contends that the trial court violated her right against double jeopardy by not merging her conviction for first degree criminal trespass into her conviction for second degree burglary. The last time the Colorado Supreme Court directly addressed this issue, it expressly held that "first degree criminal trespass is not a lesser included offense of second degree burglary." *People v. Garcia*, 940 P.2d 357, 362 (Colo. 1997). As the special concurrence explains in a thoroughly researched opinion, however, later supreme court decisions have called *Garcia*'s reasoning into question. *See infra* ¶¶ 50-60.

¶ 4 But the supreme court has never expressly overruled *Garcia*. For this reason, we must adhere to that precedent. Because we are bound to follow *Garcia*, we reject Whiteaker's merger argument. *See People v. Tarr*, 2022 COA 23, ¶ 33, 511 P.3d 672, 681 (explaining that the court of appeals is bound by, and may not depart from, supreme court precedent).

¶ 5 In addition, in this case, we address the novel issue of whether a criminal defendant is entitled to be referred to by her name, and

not generically as "the defendant," in the jury instructions. We conclude that she is not entitled to be referred to by her name.

¶ 6    For the reasons explained further below, we affirm Whiteaker's judgment of conviction entered on jury verdicts finding her guilty of second degree burglary, first degree criminal trespass, third degree assault, and harassment.

## I.    Background Facts and Procedural History

¶ 7    Whiteaker lived with her husband, J.W. (husband), and husband's daughter A.W. (stepdaughter). After Whiteaker and stepdaughter got into an argument, husband told stepdaughter to go to the house of her grandmother, L.W. (grandmother). Whiteaker could not confront stepdaughter at grandmother's house because Whiteaker was not welcome there.

¶ 8    Believing that stepdaughter was at grandmother's house, Whiteaker sent several text messages to grandmother, telling her to send stepdaughter home, insulting grandmother, and threatening to call the police. Grandmother did not respond to the text messages. Around this time, husband arrived at grandmother's house.

¶ 9     Whiteaker drove to grandmother's house and entered through the unlocked front door. After grandmother told Whiteaker to leave, a physical confrontation ensued between them. Husband intervened and, while he and Whiteaker were struggling, Whiteaker punched him "two or three" times.

¶ 10    The prosecution charged Whiteaker with second degree burglary, first degree criminal trespass, third degree assault, and harassment. Whiteaker presented a theory of self-defense, arguing that grandmother attacked her immediately when she entered grandmother's house and that husband attacked her while she was defending herself from grandmother.

¶ 11    A jury convicted Whiteaker of the charged offenses.

## II.    Analysis

¶ 12    Whiteaker contends that the trial court reversibly erred by (1) failing to merge her conviction for first degree criminal trespass into her conviction for second degree burglary; (2) denying defense counsel's request that the jury instructions refer to Whiteaker by name; and (3) instructing the jury on the initial aggressor exception to self-defense while rejecting the defense's tendered supplemental instruction.

## A.    The Merger Doctrine

¶ 13    Whiteaker asserts that first degree criminal trespass is a lesser included offense of second degree burglary and, thus, that the trial court erred by failing to merge her convictions.  We disagree.

¶ 14    "Whether two convictions must merge is a question of law that we review de novo."  *Thomas v. People*, 2021 CO 84, ¶ 19, 500 P.3d 1095, 1101.

¶ 15    "[A] defendant may not be convicted of two offenses for the same conduct if the lesser offense is included in the greater."  *Page v. People*, 2017 CO 88, ¶ 9, 402 P.3d 468, 470; *see* § 18-1-408(1)(a), C.R.S. 2021 (providing that a defendant "may not be convicted of more than one offense if . . . [o]ne offense is included in the other").  The supreme court expressly held in *Garcia* that "first degree criminal trespass is not a lesser included offense of second degree burglary."  940 P.2d at 362.

¶ 16    Whiteaker directs us to recent cases that clarify the standard for identifying a lesser included offense.  *See, e.g., Reyna-Abarca*, ¶¶ 51-53, 64, 390 P.3d at 824, 826 (articulating the statutory elements test for determining whether two convictions must merge).  Some of these cases appear to question — without overruling

— *Garcia*'s holding on merger. *See People v. Rock*, 2017 CO 84, ¶ 19 n.5, 402 P.3d 472, 478 n.5 (explaining that, "at least until [the supreme court's] holding in *Reyna-Abarca*, first degree criminal trespass . . . was clearly not considered to be a lesser included offense of second degree burglary"). The supreme court has never overruled *Garcia*, however, and the General Assembly has not materially amended the relevant language in the first degree criminal trespass and the second degree burglary statutes since the supreme court decided the case.

¶ 17    Because the supreme court "alone can overrule [its] prior precedents concerning matters of state law," *People v. Novotny*, 2014 CO 18, ¶ 26, 320 P.3d 1194, 1203, we must follow *Garcia*. *See Tarr*, ¶ 33, 511 P.3d at 681. "It matters not that the supreme court authority is old or that we purportedly discern a better rule of law. It is the prerogative of the supreme court alone to overrule its cases." *DIA Brewing Co. v. MCE-DIA, LLC*, 2020 COA 21, ¶ 63, 480 P.3d 703, 714, *aff'd on other grounds sub nom. Schaden v. DIA Brewing Co.*, 2021 CO 4M, 478 P.3d 1264; *cf. People v. LaRosa*, 2013 CO 2, ¶ 51, 293 P.3d 567, 580 (Coats, J., dissenting) ("[I]t . . . remains the prerogative of the [United States] Supreme Court alone

to overrule one of its precedents, which must therefore continue to be followed, even if they have been significantly undermined by subsequent changes in judicial doctrine.") (citation omitted). This prerogative applies even when the precedent's legal foundations are "infirm[]," "increasingly wobbly," and "moth-eaten." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1363 (7th Cir. 1996)).

¶ 18  So, regardless of the persuasiveness of Whiteaker's merger argument, we are bound to follow *Garcia*. We adopt the reasoning of the division in *People v. Denhartog*, which considered the same issue presented here and in *Garcia* — whether convictions for first degree criminal trespass and second degree burglary merge:

> [T]he supreme court has expressly held [in *Garcia*] that first degree criminal trespass is not a lesser included offense of second degree burglary.
>
> Denhartog points out that the supreme court's more recent case law, in which it clarified the standard for identifying a lesser included offense, appears to call into question *Garcia*'s continued viability. Still, the supreme court "alone can overrule [its] prior precedents concerning matters of state law." Thus, if a precedent of the supreme court "has direct application in a case, yet appears to rest on reasons rejected in some other line of

7

decisions," the court of appeals "should follow the case which directly controls," leaving to the supreme court "the prerogative of overruling its own decisions."

2019 COA 23, ¶¶ 77, 78, 452 P.3d 148, 160 (citations omitted).

¶ 19    We therefore reject Whiteaker's assertion that her conviction for first degree criminal trespass must merge into her conviction for second degree burglary under the statutory elements test articulated in *Reyna-Abarca.*

### B.    Defense Counsel's Request that the Jury Instructions Refer to Whiteaker by Name

¶ 20    Whiteaker contends that the trial court reversibly erred by denying defense counsel's request that the jury instructions refer to Whiteaker by name.  She argues that the references to "the defendant" in the instructions violated her right to due process.  We are not persuaded.

### 1.    Additional Facts

¶ 21    At the jury instruction conference, defense counsel requested that the jury instructions refer to Whiteaker as either "Ms. Whiteaker" or "Taunia Whiteaker," instead of as "the defendant." The trial court denied the request, reasoning that

for the sake of consistency and, as I mentioned, there are three different female Whiteakers involved in this trial, [so] I'm going to have the People simply make any necessary changes to the final packets that refer[] to "the defendant" throughout. I'm not aware of a requirement that we must use the defendant's surname, although I understand the request. Of course, [Whiteaker] is certainly referred to and has been throughout this trial as Ms. Whiteaker and is on the verdict forms.

### 2. Applicable Law

¶ 22 "The trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving the instructions." *People v. Lopez*, 2018 COA 119, ¶ 35, 488 P.3d 373, 380. "We review de novo the question of whether a jury instruction accurately informed the jury of the governing law." *Id.* (quoting *People v. Carbajal*, 2014 CO 60, ¶ 10, 328 P.3d 104, 106). "If the jury instructions properly inform the jury of the law, the trial court has 'broad discretion to determine the form and style of the jury instructions.'" *Id.* (quoting *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). "A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, and when it misconstrues or misapplies the law." *People v. Stellabotte*,

9

2016 COA 106, ¶ 18, 421 P.3d 1164, 1170 (citations omitted), *aff'd*,
2018 CO 66, 421 P.3d 174.

### 3. The Trial Court Did Not Abuse Its Discretion by Denying Defense Counsel's Request that the Jury Instructions Refer to Whiteaker by Name

¶ 23     While "every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent [wo]man," *Eaddy v. People*, 115 Colo. 488, 492, 174 P.2d 717, 719 (1946), Whiteaker does not direct us to any authority, and we are aware of none, holding that a trial court errs by including references to "the defendant" — as opposed to the defendant's surname — in the jury instructions.  Rather, each case Whiteaker cites analyzes whether a trial court violated a defendant's right to due process by requiring the defendant to appear before the jury either shackled or in prison attire.  *See Deck v. Missouri*, 544 U.S. 622, 630-32 (2005) (shackled); *Estelle v. Williams*, 425 U.S. 501, 503-05 (1976) (prison attire); *People v. Dillon*, 655 P.2d 841, 846 (Colo. 1982) (shackled); *Eaddy*, 115 Colo. at 492, 174 P.2d at 718-19 (prison attire); *People v. Thames*, 2019 COA 124, ¶ 47, 467 P.3d 1181, 1191 (prison attire); *People v. James*, 40 P.3d 36, 41 (Colo. App. 2001) (leg restraint), *overruled on other grounds by*

*McDonald v. People*, 2021 CO 64, 494 P.3d 1123. Those cases therefore provide little guidance on whether the trial court erred by denying defense counsel's request to identify Whiteaker by name in the jury instructions.

¶ 24    Whiteaker's cited cases uniformly explain, using analogous language, that "[t]he presumption of innocence requires the garb of innocence." *See, e.g., Eaddy*, 115 Colo. at 492, 174 P.2d at 718. Whiteaker asks us to hold for the first time that the presumption of innocence also requires the "parlance of innocence." The rationale underlying the adoption of the "garb of innocence" requirement, however, does not extend to the adoption of a "parlance of innocence" requirement. In *Deck*, the Supreme Court explained that shackling the defendant undermined "three fundamental legal principles": the defendant's presumption of innocence, the defendant's right to counsel, and "maintain[ing] a judicial process that is a dignified process." 544 U.S. at 630-32.

¶ 25    As an initial matter, references to "the defendant" in jury instructions do not undermine a defendant's presumption of innocence. Unlike shackling or prison attire, the term "defendant" does not suggest a "need to separate [the accused] from the

11

community at large," *id.* at 630 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986)), and, thus, that the defendant is guilty as charged. Rather, "defendant" is a legal term of art that does not suggest criminal guilt. Indeed, the party sued in a civil case, in which a person's guilt or innocence is not determined, is described as the "defendant." *See, e.g.*, CJI-Civ. 1:1 (2022) ("The case which we are about to try is a civil case and not a criminal case. . . . The opposing (party) (parties) (is) (are) called (the) defendant(s)."); *see also* Black's Law Dictionary 528 (11th ed. 2019) (defining "defendant" as a "person sued in a civil proceeding or accused in a criminal proceeding"). There is no suggestion in such cases that the person who was sued faces separation "from the community at large."

¶ 26 Moreover, the Colorado Model Criminal Jury Instructions repeatedly refer to the accused as "the defendant." The instructions do not bracket the term or otherwise indicate that trial courts should replace it with the defendant's surname. *See, e.g.*, COLJI-Crim. 4-2:03 (2021) (second degree burglary). A comment to the instructions states that trial courts should "[a]void using . . . words which can be construed as connoting prejudgment of the

12

evidence (e.g., the term 'victim,' which presupposes the commission of a crime)," COLJI-Crim. ch. A, miscellaneous cmt. 2 (2021). But another comment notes that, "[i]n 2016, the [Model Criminal Jury Instructions] Committee deleted the following sentence from comment 2 above: 'When possible, draft instructions using the proper names of all parties and witnesses,'" *id.* at cmt. 4. By removing the instruction to trial courts to use parties' and witnesses' proper names whenever possible in criminal cases, the supreme court impliedly rejected Whiteaker's contention that use of "the defendant" biases the jury by presupposing the guilt of the accused. *See People v. Garcia*, 2012 COA 79, ¶ 50, 296 P.3d 285, 292 ("Pattern jury instructions carry weight and should be considered by a trial court.").

¶ 27 Second, using the term "the defendant" in jury instructions does not undermine the accused's right to counsel. The defendant can still communicate with her attorney and "participate in [her] own defense, say, by freely choosing whether to take the witness stand on [her] own behalf." *Deck*, 544 U.S. at 631. Indeed, Whiteaker does not argue that the references to "the defendant" in the jury instructions hampered her ability to present a defense.

¶ 28　Finally, a trial court does not create an undignified process by referring to "the defendant" in the jury instructions. As noted, the supreme court expressly approved this terminology in COLJI-Crim. ch. A, miscellaneous cmt. 4 (2021), and impliedly approved the use of "defendant" through its adoption of the Model Criminal Jury Instructions, *see, e.g., id.* at 4-2:03. In approving the use of "defendant" in jury instructions, the supreme court was surely aware that "judges must seek to maintain a judicial process that is a dignified process." *Deck*, 544 U.S. at 631.

¶ 29　We conclude that the trial court did not abuse its discretion by denying defense counsel's request because (1) it was not required to grant it; (2) the jury instructions accurately stated the governing law, *see People v. Coahran*, 2019 COA 6, ¶ 13, 436 P.3d 617, 620; and (3) three females named Whiteaker were involved in this case, which could have confused the jury. *See Stellabotte*, ¶ 18, 421 P.3d at 1170. (Nothing in this opinion should be construed as precluding a trial judge from referring to the defendant by name in the jury instructions, in the judge's discretion.)

## C. The Initial Aggressor Exception to Self-Defense

¶ 30 Whiteaker asserts that the trial court violated her right to present a defense by including initial aggressor language in the self-defense instruction and by rejecting her tendered supplemental instruction explaining the term "initial aggressor." According to Whiteaker, initial aggressor language is appropriate in a self-defense instruction only if "there is evidence the defendant initiated the physical conflict *prior to* the conduct giving rise to the self-defense claim." We disagree.

### 1. Additional Facts

¶ 31 Multiple witnesses testified about the physical confrontation between Whiteaker and grandmother. Whiteaker testified that she went to grandmother's house, entered through the unlocked front door (as she had several times before), and "grabbed [grandmother's] hair" only after grandmother "grabbed" her and "wouldn't let go." Whiteaker said that she was "protecting herself" and that she "never hit [grandmother] or anything like that."

¶ 32 Grandmother testified that Whiteaker entered the front door with her "fists balled up," announced "[t]he bitch is here," "lunged at [grandmother]," and "hit [grandmother] in the face."

15

Grandmother said that Whiteaker was the first person to make physical contact. Husband, his brother, and stepdaughter's sister corroborated grandmother's description of the incident, each testifying that Whiteaker started the physical confrontation by entering grandmother's house in an aggressive manner and making physical contact with grandmother.

¶ 33 Whiteaker tendered a stand-alone instruction on self-defense, which contained a reference to the initial aggressor exception, and a supplemental instruction saying that "[u]ttering an insult or arguing with an individual is not enough to make a person the initial aggressor." Over defense counsel's subsequent objection, the trial court included initial aggressor language in the self-defense instruction. The court rejected Whiteaker's proposed supplemental instruction after finding it could confuse the jury because it did not fit the facts presented at trial.

## 2. Standard of Review

¶ 34 Whether sufficient evidence supports an instruction on the initial aggressor exception to self-defense is a question of law that we review de novo. *Castillo v. People*, 2018 CO 62, ¶ 32, 421 P.3d 1141, 1146. "[W]e view the evidence in the light most favorable to

16

giving the instruction." *People v. Knapp*, 2020 COA 107, ¶ 21, 487 P.3d 1243, 1250; *accord Galvan v. People*, 2020 CO 82, ¶ 33, 476 P.3d 746, 756.

### 3.    Applicable Law

¶ 35    Colorado's self-defense statute provides that "a person is justified in using physical force upon another person in order to defend [herself] or a third person from what [she] reasonably believes to be the use or imminent use of unlawful physical force by that other person." § 18-1-704(1), C.R.S. 2021.  The right to self-defense is not limitless, however.  For example,

> a person is not justified in using physical force if . . . she is the initial aggressor; except that . . . her use of physical force upon another person under the circumstances is justifiable if . . . she withdraws from the encounter and effectively communicates to the other person . . . her intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force.

§ 18-1-704(3)(b).

¶ 36    "The trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions." *Castillo*, ¶ 34, 421 P.3d at 1146-47.  "[W]hen the trial court instructs the jury on the affirmative defense of self-

17

defense, it should instruct the jury on . . . any . . . exception to that defense if the exception is supported by some evidence." *Galvan*, ¶ 25, 476 P.3d at 754.

4. The Trial Court Did Not Err by Including Initial Aggressor Language in the Self-Defense Instruction and Rejecting Whiteaker's Tendered Supplemental Instruction

¶ 37 We reject Whiteaker's assertion that the trial court erred by providing the jury with the initial aggressor language because the prosecution presented "some evidence" that Whiteaker was the initial aggressor. Grandmother, husband, husband's brother, and stepdaughter's sister each testified that Whiteaker started the physical confrontation by entering grandmother's house in an aggressive manner and making the first physical contact. Grandmother also testified that Whiteaker had her "fists balled up" when she entered the house.

¶ 38 When we view this "evidence in the light most favorable to giving the instruction," *Knapp*, ¶ 21, 487 P.3d at 1250, we conclude that the prosecution presented "some evidence" that Whiteaker was the initial aggressor, *Galvan*, ¶ 25, 476 P.3d at 754. Thus, the trial court did not err by providing the jury with a self-defense instruction containing initial aggressor language.

¶ 39    Whiteaker's testimony that she acted in self-defense by grabbing grandmother only after grandmother grabbed her first does not alter our analysis. *See People v. Newell*, 2017 COA 27, ¶ 28, 395 P.3d 1203, 1208 ("It is for the jury, not the judge, to decide which witnesses and even which version of the witnesses' testimony is to be believed."); *Knapp*, ¶ 28, 487 P.3d at 1251 ("[T]he jury was 'entitled to accept parts of [the defendant's] testimony and reject other parts,' particularly given that [the other witnesses] gave a completely different account of the encounter from [the defendant's]." (quoting *Gordon v. Benson*, 925 P.2d 775, 778 (Colo. 1996))). "When a trial court is presented with some evidence that a defendant used force in self-defense, and some evidence that the defendant is the initial aggressor, the court should instruct the jury on both self-defense and the initial aggressor exception." *Newell*, ¶ 25, 395 P.3d at 1207.

¶ 40    Moreover, we disagree with Whiteaker's interpretation of the initial aggressor exception. Contrary to Whiteaker's assertion, neither *People v. Manzanares*, 942 P.2d 1235 (Colo. App. 1996), nor any other Colorado case of which we are aware holds that a court may provide an initial aggressor instruction only if "there is

19

evidence the defendant initiated the physical conflict *prior to* the conduct giving rise to the self-defense claim." *See People v. Roberts-Bicking*, 2021 COA 12, ¶ 36, 490 P.3d 1128, 1136 (rejecting the defendant's argument that the initial aggressor instruction was inappropriate because "the act giving rise to the charged offense cannot serve as evidence that the defendant was the initial aggressor").

¶ 41    In *Manzanares*, "[t]he evidence was undisputed that [the] defendant himself did not engage in the initial altercation. Hence, nothing that occurred in that fight provided a basis for giving the instruction." 942 P.2d at 1241. "[T]he only issue remaining upon [the] defendant's return to the party was whether, by firing his pistol, he committed any of the crimes charged and, if so, whether the conduct was justified because he had acted in self-defense." *Id.* Thus, in *Manzanares*, the division held that the trial court erred by providing an instruction referencing the initial aggressor exception because the facts did not show that the defendant was the initial aggressor during the initial altercation, and not because the exception requires a break between the conduct that made the person the initial aggressor and the conduct supporting the charged

offenses. *See id.*; *see also Castillo*, ¶¶ 46-53, 421 P.3d at 1149-50 (observing that a person could be the initial aggressor to an entire criminal episode if he threatened the imminent use of unlawful physical force at the onset of the episode).

¶ 42 We also reject Whiteaker's assertion that a court may not give an initial aggressor instruction unless "[t]he *defendant* makes the initial attack on the victim . . . ; the defendant's conduct or words were sufficient to cause the victim to act in self-defense; [and] . . . [i]n a separate episode, evidenced by withdrawal or retreat, the defendant claims self-defense." Colorado case law establishes that an "initial aggressor" is a person who "initiated the physical conflict by using or threatening the imminent use of unlawful physical force." *People v. Griffin*, 224 P.3d 292, 300 (Colo. App. 2009); *see Castillo*, ¶ 41, 421 P.3d at 1148 (same). The exception does not require that the alleged victim acted in self-defense or, more generally, implicate the conduct of the alleged victim. Rather, the definition solely considers the actions of the first party to "us[e] or threaten[] the imminent use of unlawful physical force." *Griffin*, 224 P.3d at 300.

¶ 43    Although section 18-1-704(3)(b) refers to the alleged victim, it does so to explain when an initial aggressor is entitled to use justifiable physical force in self-defense — only if the initial aggressor "withdraws from the encounter and effectively communicates to the [alleged victim] his or her intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force." But even under such circumstances, an individual remains the initial aggressor if he or she "initiated the physical conflict by using or threatening the imminent use of unlawful physical force," *Griffin*, 224 P.3d at 300, and a trial court does not err by giving a self-defense instruction that includes initial aggressor language.

¶ 44    Finally, we conclude that the trial court did not abuse its discretion by rejecting Whiteaker's tendered supplemental instruction. While the evidence showed that Whiteaker uttered an insult after entering grandmother's house, it also showed that Whiteaker, through her *action* of entering grandmother's house with her fists balled up, "threaten[ed] the imminent use of unlawful physical force" before making physical contact with grandmother. *Id.*

¶ 45    Thus, we agree with the trial court that Whiteaker's tendered supplemental instruction did not fit the facts of the case and, therefore, could have confused the jury.  The court did not abuse its discretion by rejecting the potentially misleading, and largely inapplicable, supplemental instruction.  *See People v. Pahl*, 169 P.3d 169, 184 (Colo. App. 2006) (holding that the trial court did not err by rejecting misleading instructions); *see also Cassel v. People*, 92 P.3d 951, 956 (Colo. 2004) ("The trial court must tailor the self-defense instructions to the particular circumstances of the case in order to adequately apprise the jury of the law of self-defense from the standpoint of the defendant.").

¶ 46    Accordingly, we conclude that the trial court did not err by instructing the jury on the initial aggressor exception to self-defense as it did.  For this reason, we hold that the court's instructions did not violate Whiteaker's right to present a defense.

### III.    Conclusion

¶ 47    The judgment of conviction is affirmed.

JUDGE GRAHAM concurs.

JUDGE KUHN specially concurs.

JUDGE KUHN, specially concurring.

¶ 48    For the reasons aptly articulated by the majority, I agree that the trial court did not abuse its discretion in connection with the jury instructions issued in this case.  I accordingly join Parts II.B and II.C of the opinion in full.

¶ 49    But I respectfully disagree with the majority's conclusion that first degree criminal trespass is not a lesser included offense of second degree burglary.  I believe that we should apply the clarified strict elements test articulated in *Reyna-Abarca v. People*, 2017 CO 15, and that, under that test, the trial court erred by not merging these convictions.  Nonetheless, this error was not plain and therefore is not reversible.  I thus write separately to explain why I only concur with the majority's judgment in Part II.A.

   I.    *Reyna-Abarca*, not *Garcia*, is the Precedent that "Directly
                Controls" the Outcome of this Case

¶ 50    The majority bases its conclusion on *People v. Garcia*, 940 P.2d 357 (Colo. 1997), in which the supreme court held that — including a portion of the quote the majority omits — "under the statutory test applied in [*Armintrout v. People*, 864 P.2d 576 (Colo. 1993)], first degree criminal trespass is not a lesser included offense

24

of second degree burglary." *Garcia*, 940 P.2d at 362. I am mindful that the supreme court "alone can overrule [its] prior precedents concerning matters of state law," *People v. Novotny*, 2014 CO 18, ¶ 26, and I agree with the majority that *Garcia* has never been explicitly overruled. However, when read in context, I believe that *Garcia* articulated this holding as an outcome of the strict elements test in effect at the time. In my view, because the supreme court has since clarified the strict elements test, *Garcia*'s holding should not be read for the broad proposition that first degree criminal trespass is not a lesser included offense of second degree burglary under current controlling supreme court precedent.

¶ 51 Colorado uses the strict elements test, sometimes called the statutory elements test, which involves solely comparing the statutory elements of two offenses to determine if one is a lesser included of the other. *Garcia*, 940 P.2d at 360. If all the essential elements of the lesser offense are a subset of the essential elements of the greater offense, then the lesser offense is included in the greater. *Id.* At the time *Garcia* was decided, the controlling test for lesser included elements had been laid out in *Armintrout*. *Id.* at 359. The *Armintrout* test "require[d] a comparison of the elements

of the statutes involved, rather than the evidence produced at trial," but importantly, it also "omit[ted] sentence enhancement factors from consideration." *Id.*

¶ 52    In *People v. Garcia*, 920 P.2d 878 (Colo. App. 1996), a division of the court of appeals reviewed the same question on appeal here — whether first degree criminal trespass was a lesser included offense of second degree burglary. As directed by the *Armintrout* test, it observed that entry of a "dwelling" in the second degree burglary statute functioned as a sentence enhancer rather than an essential element. *Id.* at 879. But for first degree criminal trespass, the division continued, entry of a "dwelling" was an essential element of the crime. *Id.* Relying on this critical distinction, the division concluded that first degree criminal trespass was not, in fact, a lesser included offense of second degree burglary under the *Armintrout* test. *Id.* at 879-80.

¶ 53    In reviewing that case, the supreme court "f[ound] as an initial matter that the court of appeals was correct that *under the statutory test applied in Armintrout*, first degree criminal trespass is not a lesser included offense of second degree burglary." *Garcia*, 940 P.2d at 362 (emphasis added). In my view, the italicized text shows

26

that the supreme court did not hold that, as an absolute rule, first degree criminal trespass is not a lesser included offense of second degree burglary. Instead, it held that the court of appeals correctly applied the controlling test *at the time* in deciding that first degree criminal trespass was not a lesser included offense of second degree burglary *under that test.*

¶ 54 But, as Whiteaker points out, the *Armintrout* test is no longer the current law. The supreme court clarified the strict elements test in *Reyna-Abarca.* The court noted that "it ha[d] become clear that [its] prior articulations of the strict elements test ha[d] not provided the clear and consistent guidance that [the court] believe[d was] necessary." *Reyna-Abarca,* ¶ 59. To clarify the test, and provide better guidance, the court adopted the elements approach to lesser included offenses articulated in *Schmuck v. United States,* 489 U.S. 705 (1989). *Reyna-Abarca,* ¶ 59. Under the clarified strict elements test, "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Id.* at ¶ 64.

¶ 55    The court said that one of the advantages of the clarified statutory elements test is that, unlike the older versions, it

> captures those cases . . . in which an allegedly greater offense can be committed in multiple ways, without requiring [the supreme court] to stray from [its] consistently articulated view that in deciding whether one offense is included in another, we must look only to the elements of the respective offenses.

*Id.* at ¶ 63.  Crucially, while both *Garcia* decisions were premised on *Armintrout*'s distinction between statutory elements and sentence enhancers, *Reyna-Abarca* did away with this distinction, instead finding that one offense was the lesser included of the other because the lesser fell "within the universe" of ways the greater could be committed.  *Id.*

¶ 56    The court confirmed this reading in *People v. Rock*, 2017 CO 84, where it examined whether second degree criminal trespass is a lesser included offense of second degree burglary under the clarified strict elements test.  Though both crimes can be committed in multiple ways, the court noted that "the commission of second degree criminal trespass requires no more than knowingly and unlawfully entering or remaining in the dwelling of another, a subset of the statutory elements of second degree burglary."  *Id.* at

28

¶ 20. The court thus concluded that the lesser crime was a lesser included of the greater under the clarified strict elements test as articulated in *Reyna-Abarca*. *Id.* at ¶¶ 20-21.

¶ 57    Notably, in reaching this conclusion, the court observed that

> [t]he defendant would not have thought herself entitled to a lesser-included-offense instruction on *first* degree criminal trespass because, *at least until our holding in Reyna-Abarca,* first degree criminal trespass, with its limitation to unlawfully entering or remaining in a particular subset of buildings, that is, a dwelling, was clearly not considered to be a lesser included offense of second degree burglary.

*Id.* at ¶ 19 n.5 (emphasis added). While not explicit, this language suggests that the court considers the *test* from *Reyna-Abarca* to be directly controlling, not the court's *outcomes* under the *Armintrout* test it replaced.

¶ 58    I find further support for my conclusion in the manner in which the supreme court has addressed its holdings under the *Armintrout* test after *Reyna-Abarca*. In *Meads v. People*, 78 P.3d 290 (Colo. 2003), the supreme court explicitly held that "applying the [*Armintrout*] test to the relevant statutes in this case leads to the conclusion that second degree aggravated motor vehicle theft is not

29

a lesser-included offense of felony theft." *Id.* at 296. In *Reyna-Abarca,* however, the court concluded that "the result in *Meads* would have been different" under *Reyna-Abarca*'s clarified strict elements test. *Reyna-Abarca,* ¶ 67. Yet the court did not feel the need to overrule its prior explicit holding under the *Armintrout* test. Instead, it "disavow[ed] the conclusion [it had] reached" in *Meads. Reyna-Abarca,* ¶ 67. In my view, this reinforces the conclusion that the supreme court's precedent is focused on the appropriate lesser included test that should be applied, not merely on the outcomes of the previous *Armintrout* test divorced from the context in which those outcomes were reached.

¶ 59 As the majority implicitly acknowledges, if, after *Garcia* was decided, the General Assembly had changed the elements of one of the crimes in question, the majority would reexamine those changed elements under the *Reyna-Abarca* test — even despite *Garcia*'s holding. I see the supreme court changing the statutory elements test itself as no less of a change in the law that would justify us in reevaluating the crimes in question here.

¶ 60 I therefore see the "directly control[ling]" supreme court precedent in this area as requiring this court to apply the *Reyna-*

30

*Abarca* test to this case regardless of the fact that the supreme court has not explicitly overruled *Garcia*. *See People v. Denhartog*, 2019 COA 23, ¶ 78 (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)) (citing *Novotny*, ¶ 26).[1] It is not simply that I believe *Garcia*'s legal foundations are no longer sound or that applying *Reyna-Abarca* produces a better rule of law. *See supra* ¶ 17. Rather, I do not see *Garcia*'s holding as continuing to be directly controlling — that is, as reaching beyond the confines of the *Armintrout* test to the same issue under the now-controlling *Reyna-Abarca* test. I would thus apply the clarified statutory elements test articulated in *Reyna-Abarca* to this case.

## II. Though the Trial Court Erred, This Error Was Not Plain

¶ 61 Applying that test to the offenses at hand reveals that first degree criminal trespass is a lesser included offense of second degree burglary. A person commits first degree criminal trespass when she knowingly and unlawfully enters or remains in a dwelling

---

[1] For these reasons I would also depart from the division's conclusion in *People v. Denhartog*, 2019 COA 23, whose reasoning the majority adopts. *See People v. Smoots*, 2013 COA 152, ¶ 21 ("[W]e are not bound by the decisions of other divisions of this court."), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

31

of another. § 18-4-502(1)(a), C.R.S. 2021. One of the ways a person can commit second degree burglary also requires that a person knowingly and unlawfully enter or remain in the dwelling of another. § 18-4-203(1), (2)(b)(I), C.R.S. 2021. The elements of first degree criminal trespass are therefore a subset of the elements of second degree burglary, such that the first degree criminal trespass only contains elements that are also included in the elements of second degree burglary. Thus, regardless of whether the "dwelling" component of second degree burglary is a sentence enhancer, first degree criminal trespass is a lesser included offense of second degree burglary under the clarified strict elements test articulated in *Reyna-Abarca.*

¶ 62     In my view, then, the trial court erred by not merging Whiteaker's convictions for second degree burglary and first degree criminal trespass. Nonetheless, this error was not plain. *See Reyna-Abarca*, ¶ 47 (holding that "an appellate court may review an unpreserved double jeopardy claim and that the court should ordinarily review such a claim for plain error"); *see generally People v. Wambolt*, 2018 COA 88, ¶¶ 68-70; *People v. Jamison*, 2018 COA 121, ¶¶ 52-53. A plain error "is an error that is both obvious and

substantial." *Jamison*, ¶ 54. As the majority points out, *Denhartog*, a published court of appeals case, explicitly rejects the argument Whiteaker advances — even if I would depart from its conclusion. The trial court is bound to follow the decisions of appellate courts. I cannot say it was obvious error for the trial court to have acted consistently with *Denhartog* and not to have merged the convictions sua sponte. *See Scott v. People*, 2017 CO 16, ¶ 17 ("[A]n error will not ordinarily be deemed 'obvious' when either [the supreme] court or a division of the court of appeals has previously rejected an argument being advanced by a subsequent party who is asserting plain error."). And I therefore cannot conclude the error here was plain.

### III. Conclusion

¶ 63 Because I would affirm Whiteaker's convictions for first degree criminal trespass and second degree burglary, albeit for different reasons than those articulated by the majority, I concur in the judgment.