**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Malaika GRIFFIN, Defendant–Appellant.**

No. 06CA0784.

Colorado Court of Appeals, Div. III.

April 16, 2009.

Rehearing Denied June 4, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sarah A. Burtis, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Malaika Griffin, appeals the judgment of conviction entered on jury verdicts finding her guilty of first degree murder and aggravated robbery. We affirm.

## I. Background

Griffin lived next door to a carpenter. Each day after work, in front of Griffin's house, the carpenter unloaded, organized, and then reloaded tools into his truck. In May 1999, Griffin confronted the carpenter about this routine. After a heated argument, Griffin entered her house, returned with a gun, and shot the carpenter in the back, killing him.

Griffin fled to the home of an acquaintance. There, she stole a car at gunpoint and drove away.

Years later, Griffin was arrested in California. She was brought to Colorado and charged with first degree murder, aggravated robbery, and aggravated motor vehicle theft.

At trial, Griffin offered testimony that, if believed, would have allowed the jury to acquit her of murder on a theory of self-defense or to convict her of a lesser homicide. She testified that, just before the shooting, the carpenter had said, "I'm getting tired of you, bitch. I'm going to resolve this," as he reached into his truck. She also testified that she had not intended to shoot the carpenter but had fired the gun accidentally when startled by barking dogs. She did not contest the other charges.

The jury found Griffin guilty of all charges. The trial court sentenced her to life in prison

for first degree murder, plus ten years in prison for aggravated robbery.[1]

## II. Attorney Pro Hac Vice

Griffin argues that her convictions must be reversed because her trial attorney was not licensed to practice law in Colorado. We reject this argument.

■ Although the criminal rules do not expressly authorize the admission of attorneys pro hac vice, courts may act under the procedures set forth in C.R.C.P. 221. *See* Crim. P. 57(b); *People v. Thomas*, 195 P.3d 1162, 1164 (Colo.App.2008) (courts may apply civil rules in criminal cases if the criminal rules do not prescribe a specific procedure). Therefore, contrary to Griffin's view, courts may admit out-of-state attorneys to practice in criminal cases.

■ We will not address Griffin's other arguments about her attorney's admission because they depend on evidence outside the record. *Cf. People v. Apodaca*, 998 P.2d 25, 29 (Colo.App.1999) (review of an ineffective assistance of counsel claim on direct appeal is limited to the record because the trial court has not had the opportunity to consider any additional evidence). To the extent that Griffin's assertions may support a claim of ineffective assistance of counsel, they may be presented in a motion for postconviction relief. *Cf. Ardolino v. People*, 69 P.3d 73, 77 (Colo.2003) ("[D]efendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal.").

## III. Notebook Entries

Griffin argues that the court erred in admitting evidence of opinions and ideas that she wrote in a notebook. We conclude that the court did not abuse its discretion in allowing the jury to consider those written entries. We further conclude that the court was not required to give a limiting instruction sua sponte.

### A. Written Entries

While fleeing the shooting, Griffin dropped a backpack that contained, among other things, a spiral notebook. In the notebook, Griffin had written her thoughts on various subjects. At trial, the prosecution sought to introduce some of these writings to prove Griffin's culpable mental state.

Over Griffin's objection, the trial court admitted excerpts from the writings, including the following:

I am so sick of looking at white people!! I am so goddamn tired of them!! I wish I could kill those no good fagot, pedophilic, rapists, thieves & make it painful, (very).

. . . .

Since white "laws" never work for the cultural other anyway, the best thing to do is ignore them.

. . . .

We need to control whites for the good of womankind, look at all the destruct *n* they have created. . . . We must not only devalue whites to think they are less than us— *they must be worth nothing* . . . their existence must have no human significance to Blacks. They must exist only to assure us of our Black value to act out & attribute our most destructive instincts.

. . . .

Fuck our enemies. They will kill us For sure. Black woman learn defense. Kill your enemies by any means: knives (are messy & you would have over power them so make sure they are weaker/asleep), guns (try to put a pillow over it so it won't be so loud or mabe a silencer), poison (this is what you have the greatest access to use it), hire killers (group together & hire hit people or mercenaries), make your own bomb (check the internet or people (Blk woman) who are in the military to get military bks), make molotav cocktails and throw them on your enemies.

. . . .

Go ahead, try it. Go ahead, do it. Go ahead, you are afraid, I know, To kill our enemy. I am not afraid to say it/do it.

---

1. The court did not sentence Griffin for aggravated motor vehicle theft. It ruled that the theft conviction merged with the conviction for aggravated robbery. The People do not challenge this ruling.

. . . .

Enough talk, do it. Kill them. Do it often and subtlety, we have been patient too long. Our enemies taught us to be patient, wait for "their god" to come & save us, don't fight until then but be gd. servants. This is what our enemies teach us. Kill them.

. . . .

Fuck what our enemies say. Their opinion should no longer guide us in our direct *n* out of this white supremacist patriachal hell. I hate them & deep down you do too. 98% of the Blk female populat *n* think whites aren't worth shit and don't want to be around them less alone think about them. We hate whites more than they hate us. So it is time we used our fear, anger, disgust to destroy them. Blk wm unite. [sic]

### B. Standards of Admission

In admitting the notebook entries, the trial court relied on *Masters v. People*, 58 P.3d 979 (Colo.2002). In that case, the supreme court applied CRE 404(b) standards to determine whether drawings and writings were properly admitted to prove the defendant's motive. *Id.* at 995–1102.

Although *Masters* was the trial court's best model at the time, it may have been eclipsed by a more recent decision. In *People v. Greenlee*, 200 P.3d 363 (Colo.2009), the supreme court ruled that a defendant's statements, uttered two months before he shot a woman, were outside the reach of CRE 404(b) because they were not conduct, did not amount to a crime, and did not reveal prior bad acts. *Id.* at 368.

The parties have filed supplemental briefs to address whether *Greenlee* applies here. Naturally, they disagree. Griffin notes that *Greenlee* does not even mention *Masters*, let alone purport to overrule it. And she argues that *Greenlee* is distinguishable because it concerns oral statements instead of writings. The People believe that *Greenlee* controls; they argue that Griffin's written statements

are exempt from CRE 404(b) because words are not conduct.

We conclude that *Greenlee* does not change the governing analysis. It simply does not matter whether Griffin's writings are subject to CRE 404(b) because the court was required to apply the same standards in any event.[2]

To demonstrate, let us consider the test that is used to determine admissibility of other act evidence. As explained in *People v. Spoto*, 795 P.2d 1314 (Colo.1990), this is a four-step inquiry:

1. The court must consider whether the proffered evidence relates to a material fact—one that is of consequence to the determination of the action.

2. If so, the court must decide whether the evidence is logically relevant— whether it tends to make the existence of the material fact more probable or less probable.

3. If so, the court must determine whether the logical relevance is independent of the inference that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character.

4. If the proffered evidence survives the first three steps, the court must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*Id.* at 1318; *see Masters*, 58 P.3d at 996; *People v. Rath*, 44 P.3d 1033, 1038–39 (Colo. 2002).

Assuming that Griffin's writings are exempt from CRE 404(b), one can easily see why three-fourths of the *Spoto* test nevertheless applies. The first and second steps are based, not on CRE 404(b), but on the relevancy requirements of CRE 401 and 402. *Spoto*, 795 P.2d at 1318; *Rath*, 44 P.3d at 1038 n. 3 (materiality is not a separate inquiry but is an inherent part of logical relevance as defined in CRE 401). And the fourth step is based on CRE 403. *Spoto*, 795 P.2d at

---

**2.** CRE 404(b) was amended in 2007. Under the new rule, the prosecution may be required to provide pretrial notice of other act evidence that it intends to introduce. Because Griffin was tried before the effective date of the new rule, we have no reason to decide whether *Greenlee* would exempt Griffin's statements from the notice requirement.

1318; *Rath,* 44 P.3d at 1038; *see also* David P. Leonard, *New Wigmore on Evidence* § 4.6 (2009) ("Because evidence of a person's racist beliefs is likely to incite the jury to make improper character-based conclusions about behavior, the court would need to weigh the probative value of the evidence against the danger of unfair prejudice regardless of whether the evidence fits within the definition of 'other crimes, wrongs, or acts.' ").

It is harder to see why the third step of *Spoto* would apply outside the context of CRE 404(b) because that inquiry is closely tied to the language of the rule. *See* CRE 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."). Nevertheless, assuming that Griffin's writings are exempt from CRE 404(b), we must apply the third step if that analysis is required by other rules of evidence.

And it is. Far from being unique, the exclusionary part of CRE 404(b) simply mirrors the operation of two general rules: (1) CRE 404(a), which states that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion"; and (2) CRE 405(a), which requires that proof of character "be made by testimony as to reputation or by testimony in the form of an opinion." [3]

■ Therefore, when the prosecution seeks to admit any evidence which suggests that the defendant is a person of bad character, it must be prepared to meet the defendant's objection by satisfying the third step of the *Spoto* test. In other words, it must be prepared to explain why the logical relevance of that evidence does not depend on the inference that the defendant acted in conformity with his bad character. *See New Wigmore on Evidence* § 4.6 (even if evidence of neutral acts or status does not constitute uncharged misconduct under Rule 404(b), the "admissibility hurdle is set at the same height" and the "court must perform the same tasks").

We therefore conclude that the trial court employed the correct standards in determining whether to admit the evidence.

## C. Review of Ruling

■ For the following reasons, we conclude that the court did not abuse its discretion in admitting the evidence. *See People v. Stewart,* 55 P.3d 107, 122 (Colo.2002) (evidentiary rulings are reviewed for an abuse of discretion).

The notebook entries indicate that Griffin believes (1) white people are detestable and are a threat to her and other black women, and (2) therefore, she is justified in ignoring the law and killing them. Because the carpenter was white, the entries were relevant to establish Griffin's culpable mental state and to rebut her assertion that she had acted accidentally or in reasonable self-defense. This theory of relevance does not depend on the inference that Griffin acted in conformity with her bad character generally. *See Masters,* 58 P.3d at 998–1000 (writings and drawings evidencing a hatred of women were proper evidence of motive); *People v. Cousins,* 181 P.3d 365, 372–73 (Colo.App.2007) (other act evidence was admissible to show motive by demonstrating the defendant's antipathy toward women); *People v. Nicolaus,* 54 Cal.3d 551, 286 Cal.Rptr. 628, 817 P.2d 893, 906–07 (1991) (writings evidencing extreme dislike of religion were admissible to prove the defendant's mental state in murdering his religious ex-wife); *State v. Crumb,* 277 N.J.Super. 311, 649 A.2d 879, 882 (1994) (written evidence of racial animus was "powerful evidence of a motive which helps to explain an otherwise inexplicable act of random violence" and "tends to cast doubt on the credibility of defendant's self-serving statement that [the victim] initiated the confrontation"); *see also State v. Waterhouse,* 513 A.2d 862, 864–65 (Me.1986) (recording of

---

3. In effect, the exclusionary part of CRE 404(b) confirms what the other rules state: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person [according to the general rule on proof of character set forth in CRE 405(a)] in order to show that he acted in conformity therewith [according to the general rule on the use of character evidence found in CRE 404(a)]."

the defendant's belief in Satanism was relevant to show motive, which was probative of identity and intent in a prosecution for murder).

Contrary to Griffin's view, the court was not required to exclude the entries under CRE 403. Although the evidence presented a danger of unfair prejudice, it was distinctly probative of disputed issues. Thus, we cannot say that the court abused its discretion. *See Rath*, 44 P.3d at 1041 (in determining whether the incremental probative value is outweighed by the danger of unfair prejudice, the trial court necessarily retains a great deal of discretion); *People v. Nuanez*, 973 P.2d 1260, 1263 (Colo.1999) (in reviewing a ruling under CRE 403, the appellate court must assume the "maximum probative value" and "minimum unfair prejudice" that might reasonably be expected from the evidence).

### D. Limiting Instruction

■ Neither party asked the court to instruct the jury on the limited purposes for which the notebook entries could be considered. Consequently, the court did not give a limiting instruction, either when the entries were admitted into evidence or at the close of evidence.

Griffin now contends that the court erred in failing to give a limiting instruction. She argues that this error was fatally prejudicial because the jury was instructed to consider her character in determining whether she was likely to commit the offenses.

■ Because Griffin did not request a limiting instruction, we apply the plain error standard of review. We will reverse only if Griffin shows that the court committed an obvious and substantial error that undermined the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo.2005); *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003).

For the following reasons, we find no plain error.

### 1. No Obvious Error

■ Trial courts must provide complete and accurate instructions on the applicable law. *See Stewart*, 55 P.3d at 120; *People v. Cowden*, 735 P.2d 199, 202 (Colo.1987). But they are not always required to provide instructions about the evidence. As a general rule, defense counsel is charged with the task of deciding whether a limiting instruction is desirable. *See* CRE 105 (court must give a limiting instruction "upon request"); *People v. Gladney*, 194 Colo. 68, 72, 570 P.2d 231, 234 (1977) (for strategic or tactical reasons, defense counsel may consider a limiting instruction more harmful than beneficial); *see also Polster v. Griff's of Am., Inc.*, 184 Colo. 418, 423, 520 P.2d 745, 747–48 (1974) (although the court must "accurately instruct the jury on the law," it has no duty to give a limiting instruction sua sponte because that "involves only a rule of evidence and does not stand on the same footing").

■ Trial courts may be faulted for failing to give limiting instructions that are required by statute. *See People v. McClure*, 779 P.2d 864, 865–67 (Colo.1989) (reversing for plain error when the court failed to give the special cautionary instruction required under section 13–25–129(2), C.R.S.2008); *People v. Roberts*, 738 P.2d 380, 382 (Colo.App.1986) (reversing for plain error when the court failed to give the limiting instruction required under section 16–10–301, C.R.S.2008); *but see People v. Torres*, 141 P.3d 931, 935 (Colo.App.2006) (no plain error for failure to give the limiting instruction required under section 18–6–801.5, C.R.S.2008); *People v. Moore*, 117 P.3d 1, 3–4 (Colo.App.2004) (same); *People v. Underwood*, 53 P.3d 765, 771–73 (Colo.App.2002) (no plain error for failure to give the instruction required under section 16–10–301).

But absent a special statutory requirement, the supreme court has consistently held that trial courts have no duty to give limiting instructions sua sponte. *See Gladney*, 194 Colo. at 72, 570 P.2d at 233–34; *People v. Mullins*, 188 Colo. 23, 27, 532 P.2d 733, 736 (1975); *People v. Scheidt*, 182 Colo. 374, 382–83, 513 P.2d 446, 451 (1973); *Land v. People*, 171 Colo. 114, 120, 465 P.2d 124, 127 (1970); *Bishop v. People*, 165 Colo. 423, 428, 439 P.2d 342, 345 (1968). And divisions of this court have consistently followed suit.

See, e.g., *People v. Salyer,* 80 P.3d 831, 838–39 (Colo.App.2003); *People v. Rivera,* 56 P.3d 1155, 1168 (Colo.App.2002); *People v. Harris,* 892 P.2d 378, 382 (Colo.App.1994); *People v. Pennese,* 830 P.2d 1085, 1089 (Colo. App.1991); *People v. Taylor,* 804 P.2d 196, 202–03 (Colo.App.1990); *People v. Lucero,* 724 P.2d 1374, 1377 (Colo.App.1986); *People v. Fonda,* 712 P.2d 1067, 1069 (Colo.App. 1985); *People v. White,* 680 P.2d 1318, 1321 (Colo.App.1984).

Here, the trial court was not required to give a limiting instruction, either by statute or by timely request. We therefore conclude that the court did not commit the kind of obvious error that may lead to reversal under the plain error doctrine. *See Miller,* 113 P.3d at 750; *People v. O'Connell,* 134 P.3d 460, 465 (Colo.App.2005) (error is plain only if it is obvious).

### 2. Fundamental Fairness

■ After the prosecution rested its case-in-chief, the court allowed Griffin to introduce evidence of her reputation for peacefulness. *See* CRE 404(a)(1); *People v. Miller,* 890 P.2d 84, 94 (Colo.1995) ("[I]f a defendant is accused of a violent crime, that defendant has the right to introduce evidence of his or her peaceful, non-violent nature."). At the end of the trial, presumably with Griffin's reputation evidence in mind, the court instructed the jury as follows: "In arriving at your verdict you may consider evidence of the defendant's character in determining whether the defendant would be likely to commit the offense charged."

Griffin argues that, in light of these events, the absence of a limiting instruction was so prejudicial that it undermined the fundamental fairness of her trial. We reject this argument for two reasons.

First, because we have concluded that the court did not commit an obvious error, it does not matter whether the events were prejudicial. *See United States v. de la Cruz–Paulino,* 61 F.3d 986, 996 (1st Cir.1995)

("[B]ecause the alleged error is not clear or obvious, we need not reach the other elements of the plain-error review."); *State v. Barnes,* 94 Ohio St.3d 21, 759 N.E.2d 1240, 1248 (2002) (if the alleged error is not plain, the appellate court need not consider whether it affected the defendant's substantial rights).

Second, we are not persuaded that the events were fatally prejudicial.

For purposes of analysis, we assume that the court erred as Griffin contends: by failing to instruct the jury about the purposes for which the notebook entries could be considered, and then by instructing the jury to consider character evidence in deciding whether Griffin was "likely to commit the offense[s]," the court invited the jury to consider the notebook entries as evidence of character, thereby violating CRE 404(b) and 405(a). *But see Scheidt,* 182 Colo. at 383, 513 P.2d at 451 (in the absence of a request for a limiting instruction, the evidence was admissible for all purposes); *Johnson v. People,* 174 Colo. 413, 416, 484 P.2d 110, 111 (1971) ("The defendant did not request that the evidence be limited to scheme, plan, design or intent; and in the absence of an objection or request for a limitative instruction, the evidence was admissible for all purposes.").

On this assumption, we acknowledge that the events were potentially prejudicial.[4] But in the context of this case, we conclude that actual prejudice was unlikely. Griffin admitted that she killed her neighbor, and she offered no defense to the charge of aggravated robbery. The only issue was whether she had acted with intent and after deliberation (as the prosecution contended) or had shot the victim accidentally or in reasonable self-defense (as she contended).

On this issue, the notebook entries were damaging, for legitimate reasons. By exposing Griffin's racial animus and her dismissive view of "laws," the entries suggested that she had acted with intent, not accidentally or in self-defense. And because the entries were

---

4. Consider, for example, a hypothetical case in which identity was at issue. The events would have been prejudicial if they had caused a jury to reason thus: "We have been instructed to consider Griffin's character in deciding whether she was likely to commit the charged offenses; the notebook entries show that Griffin is a person of poor character—the kind of person who is likely to commit a murder; we therefore find that she is the person who killed the carpenter."

so obviously relevant for this legitimate purpose, there is little danger that the jury relied on the less potent, prohibited inference that Griffin had acted in conformity with her poor character generally.

· Moreover, the prosecution's evidence was strong. Various witnesses established that Griffin was angry and hostile before the murder. Griffin's next steps—leaving the argument, entering the house, returning with a gun, and shooting the carpenter in the back—indicate she had acted with intent, not in self-defense. And her subsequent actions—fleeing the scene, taking a car at gunpoint, and hiding in another state—indicate consciousness of guilt. *See People v. Summitt*, 132 P.3d 320, 324–25 (Colo.2006) (flight may show consciousness of guilt).

Thus, the absence of a limiting instruction does not cast serious doubt on the reliability of the judgment. *See Auman v. People*, 109 P.3d 647, 665 (Colo.2005) (instructional error is not plain error when evidence of the defendant's guilt is overwhelming).

## IV. Self-defense Instructions

■ Griffin argues that the trial court's instructions on self-defense were erroneous in three ways: (1) the court erred in including an instruction on the initial aggressor exception; (2) the court failed to define the term "initial aggressor"; and (3) the court failed to instruct the jury about the right of self-defense against a first or second degree assault.

Only the first of these arguments was preserved by a contemporaneous objection. We therefore review the second and third arguments only for plain error. *See Miller*, 113 P.3d at 749.

We reject all three arguments.

### A. Initial Aggressor Exception

■ A person's right of self-defense is abridged when he is the initial aggressor. *See* § 18–1–704(3)(b), C.R.S.2008 (initial aggressor justifiably may use force in self-defense only if "he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use

of unlawful physical force"); *People v. Toler*, 9 P.3d 341, 350 (Colo.2000) (initial aggressors "must retreat before employing physical force in self-defense").

■ A court may give an initial aggressor instruction if the evidence will support a reasonable inference that the defendant initiated the physical conflict by using or threatening the imminent use of unlawful physical force. *See People v. Roadcap*, 78 P.3d 1108, 1113 (Colo.App.2003) ("A defendant must initiate the physical conflict to be the initial aggressor."); *cf. People v. Jones*, 675 P.2d 9, 16 (Colo.1984) ("The Colorado law of self-defense requires that there be some evidence showing that the victim, as the initial aggressor, used or threatened the imminent use of unlawful physical force against the defendant.").

Here, Griffin's initial verbal confrontation was insufficient to make her the initial aggressor. *See People v. Silva*, 987 P.2d 909, 914 (Colo.App.1999) (that the defendant may have uttered insults or engaged in arguments does not justify an initial aggressor instruction). But evidence of her other actions—such as leaving the argument and returning with a gun—was sufficient to warrant the instruction. *See People v. Willner*, 879 P.2d 19, 25 (Colo.1994) (defendant chasing truck with gun in hand was initial aggressor).

### B. Meaning of "Initial Aggressor"

■ The court did not commit plain error by failing to define the term "initial aggressor."

■ In appropriate cases, the trial court may define "initial aggressor" so that the jury understands the type of conduct that can constitute "aggression." *Cf. People v. Pahlavan*, 83 P.3d 1138, 1142 (Colo.App. 2003) (it was important for the trial court to instruct the jury on the specialized meaning of "consent" in the sexual assault context). But there is no basis for reversal here. It is unlikely that the jury would have relied on the initial verbal confrontation to find Griffin the initial aggressor when, by her own admission, she later approached the carpenter with gun in hand. *See People v. Fichtner*, 869 P.2d 539, 545 (Colo.1994) (declining to

reverse when "there is no reasonable possibility that the incomplete jury instruction so contributed to the defendant's conviction that it constitutes plain error").

## C. Assault

■ Relying on *People v. Janes,* 982 P.2d 300, 304–05 (Colo.1999), Griffin argues that the court should have instructed the jury on an additional theory of self-defense—namely, that she was entitled to use deadly force to defend against an apparent assault. We agree. The record contains some evidence from which the jury could infer that the carpenter reasonably appeared about to commit first or second degree assault. *See* § 18–1–704(2)(c), C.R.S.2008.

■ Nevertheless, we find no plain error because there is no reasonable possibility that the additional instruction would have made a difference. On the evidence presented, a jury could not have acquitted Griffin under the additional instruction without reaching the same conclusion under the instructions given. (The findings necessary to support self-defense under the additional instruction would have established Griffin's reasonable belief that the carpenter was about to cause her great bodily harm.) *See Fichtner,* 869 P.2d at 545.

## V. Prosecutorial Misconduct

The prosecutor's closing argument was not tremendously improper, nor did it undermine the fundamental fairness of the trial. We therefore find no plain error. *See Salyer,* 80 P.3d at 839.

The judgment is affirmed.

Judge CASEBOLT and Judge J. JONES concur.