23CA0340 Peo v Turner 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0340
Garfield County District Court No. 20CR356
Honorable James B. Boyd, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeffrey H. Turner,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Daniel Kent, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jeffrey H. Turner, appeals his conviction for driving under the influence (DUI) – fourth or subsequent offense. We affirm.

## I.    Background

¶ 2    On May 8, 2020, Trooper Charles Hiller initiated a traffic stop on I-70 of a black Rav 4 traveling at ninety-three miles per hour. The vehicle moved into the right lane and exited the interstate for the stop. Trooper Hiller spoke to Turner, who was driving the vehicle. He noted that Turner had glassy eyes and that a strong odor of marijuana was present inside the vehicle. Trooper Hiller asked Turner if he had consumed marijuana. Turner said he had smoked a joint and a "dab"[1] earlier that day.

¶ 3    Trooper Hiller asked Turner to exit the vehicle and noted the smell of marijuana on his breath and a green residue on his tongue. He then administered voluntary field sobriety tests. Based on the results of the tests, Trooper Hiller believed Turner to be impaired and arrested him. Trooper Hiller found marijuana and marijuana

---

[1] At trial, Trooper Hiller testified, "A dab is usually like a pipe with marijuana concentrate or like wax or like the oily substance that is marijuana . . . heated up and smoked."

paraphernalia during a search of Turner's car. Turner was informed of Colorado's express consent laws and agreed to a blood test, after which he was taken to a hotel room for the evening.[2]

¶ 4    Turner was charged with DUI – fourth or subsequent offense; speeding; no proof of insurance; illegal use, possession, or consumption of marijuana in a vehicle; and illegal possession or consumption of alcohol in a vehicle. A jury found him guilty as charged. Turner was sentenced to two years in the Department of Corrections for the DUI conviction with a concurrent thirty days in jail for the proof of insurance conviction, and the court imposed various fines.

¶ 5    Turner appeals his conviction for DUI.

## II.    Expert Testimony

¶ 6    Turner first contends that the trial court erred by permitting Trooper Hiller's testimony about the administration and interpretation of certain standardized field sobriety tests (SFSTs) and tests learned through the Advanced Roadside Impaired Driving

---

[2] Trooper Hiller transported Turner to a hotel rather than to jail because of the jail's COVID restrictions and because Turner had several live reptiles in the car when he was pulled over.

Enforcement (ARIDE) course (collectively, roadside maneuvers). We disagree.

## A. Additional Facts

¶ 7 At trial, the prosecution elicited the following testimony from Trooper Hiller.

¶ 8 Trooper Hiller had been employed in law enforcement from 2005 to 2020. Over the course of his career, he conducted more than 500 DUI investigations.

¶ 9 As part of his training and education, Trooper Hiller had taken courses on detecting impaired driving and drug symptomology, including the administration and interpretation of roadside maneuvers. He had also observed the effects of marijuana on the performance of roadside maneuvers during "green labs."[3]

¶ 10 The SFSTs consist of the horizontal gaze nystagmus (HGN), vertical gaze nystagmus (VGN), walk-and-turn, and one-legged stand tests. Turner's performance on the HGN and VGN tests didn't indicate that he was impaired, but Trooper Hiller informally observed that he wasn't able to follow instructions during

---

[3] In a green lab, participants consume marijuana, and officers administer roadside maneuvers to observe their performance.

administration of the HGN test. Turner also didn't "ma[ke] it past the instruction phase" of the walk-and-turn test, and he demonstrated impairment on the one-legged stand test.

¶ 11 Trooper Hiller also administered two ARIDE maneuvers — the modified Romberg test (measuring a person's internal clock) and the lack of convergence test (measuring a person's ability to converge their eyes to specific point). Turner performed just outside the normal range on the modified Romberg test, indicating impairment. His performance on the lack of convergence test is unclear from the record.

¶ 12 Given Turner's overall performance on the roadside maneuvers and the other observations Trooper Hiller made during the stop, Trooper Hiller believed Turner was impaired.

B. Standard of Review and Applicable Law

¶ 13 Because Turner didn't object to any of Trooper Hiller's testimony, we review for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. Plain error occurs when the error is obvious and "so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman v. People*, 2019 CO 73, ¶ 19.

4

¶ 14    A lay witness's testimony is limited to opinions or inferences that are (1) "rationally based on the perception of the witness"; (2) "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"; and (3) "not based on scientific, technical, or other specialized knowledge within the scope of [CRE] 702."  CRE 701.

¶ 15    Conversely, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  CRE 702.  A court may not admit expert testimony under the guise of lay opinion. *Venalonzo v. People*, 2017 CO 9, ¶ 31.

### C.    Analysis

¶ 16    Turner contends that Trooper Hiller's testimony about the VGN, HGN, lack of convergence, and modified Romberg tests, as well as his testimony about Turner's impairment based on the results of those tests, was inadmissible because it was expert testimony in the guise of lay testimony.

¶ 17     We agree that at least some of Trooper Hiller's testimony was expert testimony. *See Campbell v. People*, 2019 CO 66, ¶ 31 (holding that the administration and interpretation of the HGN test is expert testimony). Nevertheless, we conclude that the court didn't err by admitting it. A party calling an expert witness need not formally offer, and the trial court need not formally accept, the witness as an expert to admit the expert's testimony so long as the testimony meets the requirements of CRE 702 and is based on generally reliable scientific principles[4] as set forth in *People v. Shreck*, 22 P.3d 68, 78-79 (Colo. 2001). *People v. Martinez*, 2024 CO 69, ¶¶ 27-36.[5]

¶ 18     To the extent the administration and interpretation of roadside maneuvers is expert testimony, Trooper Hiller was qualified to give

---

[4] Turner doesn't suggest that the scientific principles behind roadside maneuvers are unreliable such that testimony about the administration and results of those tests would be inadmissible under *People v. Shreck*, 22 P.3d 68 (Colo. 2001). Accordingly, we don't analyze this component of expert testimony admissibility.

[5] Although Turner doesn't raise any argument about expert disclosure, we note that the prosecution disclosed Trooper Hiller as an expert in field sobriety tests approximately six months before trial. *See People v. Martinez*, 2024 CO 69, ¶ 32 (noting that cases ruling that expert testimony was improperly admitted as lay testimony were concerned with absence of pretrial disclosure of expert witnesses).

that testimony by his training and experience. Moreover, the testimony was useful to the jury because whether Turner was under the influence due to his marijuana usage was the primary issue disputed at trial. Thus, Trooper Hiller's testimony was properly admitted as *expert* testimony.

¶ 19 Even assuming the court erred, however, the error wasn't substantial. The administration and results of the HGN and VGN tests didn't prejudice Turner because he didn't display signs of impairment under those tests. Likewise, while Trooper Hiller testified about what the lack of convergence test was designed to measure, he didn't testify that Turner demonstrated impairment during that test.

¶ 20 The only expert testimony that arguably prejudiced Turner was the testimony about the modified Romberg test and the results thereof. However, we can't conclude that the exclusion of this testimony would have significantly impacted the outcome at trial. Trooper Hiller's overall opinion regarding Turner's impairment was based not only on the modified Romberg test but also on (1) the results of the walk-and-turn test (specifically, Turner's inability to follow instructions); (2) Turner's performance on the one-legged

stand test; and (3) Trooper Hiller's informal observations of Turner's appearance, comportment, and inability to follow directions. Turner doesn't challenge the admissibility of the walk-and-turn or one-legged stand test testimony on appeal. And to the extent Trooper Hiller's opinion was based on informal observations, it required no expertise. *Cf. People v. Souva,* 141 P.3d 845, 850 (Colo. App. 2005) (certified addiction counselor who had "experience dealing with . . . people who used drugs" could offer lay testimony that defendant was under the influence when she observed him).

¶ 21 Furthermore, Trooper Hiller's testimony wasn't the only support for Turner's conviction. The jury also saw video footage of the roadside maneuvers, parts of which showed that Turner was unsteady on his feet, confused, and had trouble following Trooper Hiller's instructions. And the jury could infer that Turner was under the influence from the amount of tetrahydrocannabinol (THC) in his blood. *See infra* Part III.C.

¶ 22 Accordingly, even if the court erred by admitting the challenged testimony, its admission doesn't cast serious doubt on the reliability of the judgment of conviction. *See Cardman,* ¶ 19.

### III. Prosecution's Repeated Usage of "Legal Limit"

¶ 23    Turner argues that the prosecution misstated the law and improperly lowered its burden of proof by repeatedly referring to the five-nanogram-per-milliliter permissive inference set forth in section 42-4-1301(6)(a)(IV), C.R.S. 2024, as the "legal limit" for THC concentration in the blood while operating a vehicle. We conclude that any error wasn't plain.

### A.    Applicable Law and Standard of Review

¶ 24    In Colorado, a driver who has consumed THC is "[d]riving under the influence" if the THC renders the driver "substantially incapable, . . . mentally or physically, . . . to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." § 42-4-1301(1)(f). If a driver's blood is shown to contain "five nanograms or more of delta 9-[THC] per milliliter . . . such fact gives rise to a permissible inference that the defendant was under the influence." § 42-4-1301(6)(a)(IV). A permissible inference doesn't shift the burden of proof to the defendant "but instead allows the trier of fact to find the inferred fact from the proof of the predicate fact." *People v. Felgar*, 58 P.3d 1122, 1124 (Colo. App. 2002).

¶ 25    While an individual whose blood alcohol concentration is 0.08 or more commits DUI per se, no similar "per se" violation exists for driving under the influence of THC.  *See* § 42-4-1301(2)(a).

¶ 26    "Although a prosecutor may argue all reasonable inferences from the evidence in the record, [they] may not misstate or misinterpret the law . . . ."  *People v. McMinn*, 2013 COA 94, ¶ 62 (first citing *People v. Cevallos–Acosta*, 140 P.3d 116, 122 (Colo. App. 2005); and then citing *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006)).  We review a claim of prosecutorial misconduct in two steps.  *People v. Rhea*, 2014 COA 60, ¶ 40.  We first determine whether misconduct occurred based on the totality of the circumstances.  *Id.*  If we conclude it did, we determine whether it warrants reversal according to the proper standard of review.  *Id.*

¶ 27    Because Turner didn't preserve this issue, we review it for plain error.  *See Hagos*, ¶ 14

### B.    Additional Facts

¶ 28    The prosecution presented evidence of Turner's blood test results, which showed that he had eighteen nanograms per milliliter of THC in his blood approximately one hour after he was pulled over.

¶ 29     Throughout the trial, the prosecution used the terms "legal limit" or "limit" to describe the five-nanogram-per-milliliter level that gives rise to a permissible inference of THC intoxication under Colorado law.  For instance, during opening statements, the prosecution informed the jury, "You will . . . hear, at the close of evidence, that the *limit* for [THC] is 5 nanograms.  So the defendant was driving with three times more than the *legal limit* of marijuana in his system."  (Emphases added.)  And during rebuttal closings, the prosecutor said:

> [T]his defendant thought he was fine, he thought it was okay to get up, have his french toast, smoke a joint and then make a couple of stops, and eight hours later, having traveled approximately 45 miles, be more than three times the *legal limit* of THC in his system.

(Emphasis added.)  All in all, during the opening and rebuttal closing statements, the prosecution referred to the "limit" or "legal limit" eleven times.

¶ 30     The term also came up during testimony: The toxicologist who analyzed Turner's blood sample said that she was aware that five nanograms per milliliter was Colorado's "legal limit" for THC levels while driving.  And during Turner's cross-examination, the

11

prosecution characterized the five-nanogram permissible inference level as a "legal limit" five times.

¶ 31    Defense counsel didn't object to any of these characterizations.

### C.    Analysis

¶ 32    Turner argues that the prosecution's characterization of the five-nanogram-per-milliliter threshold as a "legal limit" constituted misconduct warranting reversal.  Specifically, Turner contends that, by referring to the permissive inference as a "legal limit," the prosecution "created an appearance of a rebuttable presumption" that being over the five-nanogram-per-milliliter threshold was automatic grounds for conviction, which lowered the prosecution's burden of proof.  Assuming, without deciding, that the prosecution erred by using the term "legal limit" and that the error was obvious, we nevertheless conclude that the error was not substantial in light of the strength and quantity of the evidence of Turner's intoxication presented at trial.

¶ 33    "Plain error occurs only when, after review of the entire record, the appellate court concludes that the error undermined the fundamental fairness of the trial." *People v. Miller*, 113 P.3d 743, 745 (Colo. 2005).  The record reflects that the jury received a

written instruction that (1) accurately explained the permissible inference; (2) informed the jury that the permissible inference "allows, but does not require, you to find a fact from proof of another fact or facts, if that conclusion is justified by the evidence as a whole"; and (3) reminded the jury that the prosecution bore the burden of proof and that "a permissible inference does not shift that burden to the defendant." Moreover, overwhelming evidence supported Turner's conviction:

- The jury could infer that Turner was under the influence based on the concentration of THC in his blood.

- As described in Part II.A, above, Trooper Hiller testified that he believed Turner was under the influence based on Turner's performance on the roadside maneuvers.

- As described in Part II.C, above, the video footage showed Turner's uneven performance during the roadside maneuvers.

- When pulled over, Turner made a wide lane change, hitting the white lines demarcating the right side of the lane.

- Trooper Hiller observed Turner fumbling with his identification documents when asked to produce them and found several marijuana containers and other drug paraphernalia in his car.

¶ 34 Given the strength of the evidence and the jury instructions, we cannot conclude that the prosecution's repeated use of the phrase "legal limit" casts "serious doubt on the reliability of the judgment of conviction" in this case. *Cardman*, ¶ 19. We therefore discern no plain error.

## IV. Limiting Instruction Regarding Prior Conviction Records

### A. Additional Facts

¶ 35 On the second day of trial, the prosecution presented certified records of Turner's four prior DUI convictions to prove that this was his fourth or subsequent offense. *See People v. Herold*, 2024 COA 53, ¶¶ 12-13 (noting that prior convictions are an element of felony DUI that must be proved beyond a reasonable doubt).

¶ 36     Defense counsel didn't argue that the records prejudiced
Turner or ask for a limiting instruction,[6] and the records were
admitted into evidence.

¶ 37     Turner argues that the court erred by failing to sua sponte
instruct the jury that the evidence of prior convictions could not be
used to prove that he drove under the influence on this occasion.
We disagree.

### B.     Analysis

¶ 38     We review a trial court's evidentiary rulings for an abuse of
discretion.  *Campbell*, ¶ 21.  A trial court abuses its discretion when
its ruling is manifestly arbitrary, unreasonable or unfair.  *Id.*
Because Turner didn't request a limiting instruction, we review for
plain error.  *See People v. Griffin*, 224 P.3d 292, 298 (Colo. App.
2009).

¶ 39     We perceive no error because the court was not required to
issue a limiting instruction sua sponte.  *See id.* at 298-99.  Absent a
special statutory requirement or a timely request by either party to
instruct the jury on the limited purpose of a particular piece of

---

[6] Defense counsel objected (and was overruled) on other grounds
not relevant to this appeal.

evidence, a court is not required to give a limiting instruction. *Id.* Instead, "[a]s a general rule, defense counsel is charged with the task of deciding whether a limiting instruction is desirable." *Id.* at 298.

## V.    Cumulative Error

¶ 40    Finally, Turner contends that the combined effect of the foregoing alleged errors warrants reversal of his conviction.

¶ 41    "The doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Conyac*, 2014 COA 8M, ¶ 152. Under the cumulative error standard, a conviction will be reversed only if the aggregate impact of any errors substantially prejudiced a defendant's right to a fair trial. *Id.*

¶ 42    Here, we assumed one trial error with respect to Turner's claim that the prosecution committed misconduct by continually utilizing the phrase "legal limit," but we perceived no error on the expert testimony and limiting instruction contentions. Because we do not discern more than one trial error in this case, cumulative error is inapplicable. *See id.*

## VI.  Disposition

¶ 43    The judgment of conviction for DUI – fourth or subsequent offense is affirmed.  The portions of the judgment not affected by this appeal remain undisturbed.

JUDGE FOX and JUDGE GOMEZ concur.