22CA1856 Peo v Gonzalez 12-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1856
Jefferson County District Court No. 20CR3397
Honorable Lindsay VanGilder, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jorge Antillion Gonzalez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Grove and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Christopher Gehring, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jorge Antillion Gonzalez, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child by one in a position of trust.  We affirm.

## I.     Background

¶ 2     The prosecution presented the following evidence at trial.

¶ 3     J.B. is the named victim in this case.  In 2019, J.B.'s mother defaulted on her rental payments for a storage unit, of which Gonzalez was an authorized user.  The contents of the storage unit were purchased by a third party, and the new owner found a cell phone in a briefcase and Gonzalez's social security card in a box of documents.

¶ 4     The owner took the SD card out of the phone and looked at its contents.  Six videos on the card, which were time-stamped between August 1, 2017, and September 25, 2017, showed J.B., who was eight years old at the time, asleep.  The videos showed a hand lifting J.B.'s bedcovers off and pushing her underwear aside to touch her genitalia.  A seventh video, time-stamped August 7, 2017, showed Gonzalez's face and depicted him pulling the bedcovers off A.B. (J.B.'s sibling) while she was sleeping, fully clothed, and then putting them back down (August 7 video).  The

majority of the remaining content on the SD card related to Gonzalez, including "selfies" of Gonzalez, photos of Gonzalez with his dog, and photos of J.B. and A.B. The new owner of the storage unit took the cell phone, the SD card, and the social security card to the police.

¶ 5     The People charged Gonzalez with one count of sexual assault on a child (J.B.) by a person in a position of trust. That count alleged that the victim was under fifteen years old and that the crime occurred as a part of a pattern of abuse between August 1, 2017, and September 25, 2017. The People also charged Gonzalez with eleven counts of sexual exploitation of children (all identifying J.B. as the victim), one count of attempted sexual exploitation of children (identifying A.B. as the victim), and a habitual sexual offender against children sentence enhancer. The prosecution later moved to dismiss the sentence enhancer, and the trial court granted that motion. The trial court subsequently dismissed the sexual exploitation charges on double jeopardy grounds because, in a separate case in which A.B. was the named victim, Gonzalez had already pleaded guilty to sexual exploitation of children with a date range encompassing the one in this case.

¶ 6     The prosecution elected to try Gonzalez based on six acts corresponding to videos from the SD card dated August 4, 17, and 28, 2017; and September 19 and 21, 2017.

¶ 7     In the month before trial, defense counsel filed a request for notice of and motion to exclude other act evidence under CRE 404(b).

¶ 8     At a subsequent pretrial hearing, the prosecutor said she intended to introduce six videos at trial — five exclusively showing J.B. and one, which would "need to be redacted," showing J.B. and A.B.  The prosecutor indicated that there was no plan to introduce any videos showing assaults of A.B.  Defense counsel said he still needed to view the videos.

¶ 9     At another pretrial hearing the day before trial, the prosecutor said she intended to introduce the August 7 video showing Gonzalez's face just before he lifted the covers off A.B.  Defense counsel argued that the video was inadmissible under CRE 404(b), "or if it's not [404B], it is res gestae, which is no longer admissible pursuant to [*Rojas v. People*, 2022 CO 8]."  The prosecutor argued that the video didn't implicate CRE 404(b) because no bad act took place, seeing as there was no nudity depicted and Gonzalez didn't

touch A.B. The prosecutor also argued that the incident shown in the video was relevant to proving that Gonzalez was the person in the other videos. Defense counsel responded that it was "absurd" for the prosecution to claim that no bad act occurred in the video when it had used that video as the basis for one of the sexual exploitation charges involving A.B. that was dismissed on double jeopardy grounds. The trial court reserved ruling on the issue until it had viewed the August 7 video.

¶ 10 On the first day of trial, the trial court revisited the issue, indicating that it had viewed the August 7 video. Defense counsel renewed his objections, arguing that the video was inadmissible under CRE 404(b) and didn't qualify as intrinsic evidence under *Rojas.* He reasoned that the video formed the basis for the dismissed attempted sexual exploitation charge, and the act depicted was therefore uncharged other act evidence. The prosecutor maintained that the video didn't fall under CRE 404(b) because it didn't depict a bad act and also argued that the act was intrinsic evidence under *Rojas.*

¶ 11 The trial court ruled that the video didn't implicate CRE 404(b) because it didn't depict a bad act, was intrinsic to the charged

conduct under *Rojas,* and was relevant to establish identity. The court also found that the video was admissible under CRE 401, 402, and 403, noting that "any danger of unfair prejudice is normal to none, in the sense there are no actions taken by Mr. Gonzalez in the video."

¶ 12 During her opening statement, the prosecutor told the jury that "one of the most important things we'll show you is that the defendant himself, in the course of a separate video, enters [J.B. and A.B.'s bedroom], turns the camera around, and shows his own face on camera."

¶ 13 During the trial, the prosecutor moved to admit a frame of Gonzalez's face taken from the August 7 video. Defense counsel objected, arguing that there was "no time frame attached" to the frame and that it was "cumulative and irrelevant" under CRE 401, 402, and 403. The trial court overruled the objection and admitted the frame, and it was shown to the jury. J.B.'s aunt testified that Gonzalez was the man in the frame.

¶ 14 After the prosecutor played the six videos depicting sexual assaults of J.B. for the jury, she moved to admit the August 7 video. Over defense counsel's renewed objection, the trial court admitted

the video, and it was played for the jury. A detective on the case testified that Gonzalez was the man in the video.

¶ 15 The jury was subsequently shown still frames of the hands depicted in the videos, each taken from the six sexual assault videos and the August 7 video.

¶ 16 In closing argument, the prosecutor referred to the August 7 video, arguing that it showed Gonzalez "doing what he normally did, which was walk into the bedroom, move some covers, and then swab over the camera so we could see it plain as day."

¶ 17 During deliberations, the jury asked to rewatch the August 7 video twice. During the second viewing, and over defense counsel's objection, the jurors were allowed to pause and discuss the video.

¶ 18 The jury found Gonzalez guilty of the charged count of sexual assault on a child by a person in a position of trust (victim under fifteen years old) as a part of a pattern of abuse. The jury also found that Gonzalez had committed all six acts in August and September 2017 as alleged by the prosecution.

¶ 19 The trial court sentenced Gonzalez to an indeterminate term of ten years to life in prison plus an indeterminate term of twenty years to life on parole.

## II. Discussion

¶ 20    Gonzalez contends that the trial court erroneously admitted the August 7 video and associated frame of his face because they constituted extrinsic other act evidence that was inadmissible under CRE 404(b) and *Rojas*. We don't agree.

### A. Preservation

¶ 21    The parties agree that Gonzalez preserved his challenge to the video evidence but dispute the same regarding the frame. The People assert that, although Gonzalez's counsel objected to the frame at trial, counsel did so on different grounds than Gonzalez raises on appeal, and that we should therefore review for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14 (we review errors that weren't preserved by objection for plain error). However, we don't need to resolve the preservation issue because we conclude that the trial court didn't err by admitting the evidence.

### B. Standard of Review

¶ 22    We review a trial court's evidentiary ruling for an abuse of discretion. *Rojas*, ¶ 16. A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it

7

misconstrues or misapplies the law. *People v. Trujillo*, 2025 COA 22, ¶ 24.

¶ 23    "We can affirm the trial court's evidentiary ruling on any ground supported by the record, even if that ground was not articulated or considered by the trial court." *People v. Brown*, 2014 COA 155M-2, ¶ 15.

### C.    Applicable Law

¶ 24    Under CRE 404(b), evidence of other crimes, wrongs, or acts isn't admissible to prove a defendant's character to show that he acted in conformity with that character.  But such evidence may be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  CRE 404(b)(2).

¶ 25    In evaluating whether other act evidence implicates CRE 404(b), a trial court must first decide if the evidence is intrinsic or extrinsic to the charged offense.  *Rojas*, ¶ 52.  "Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it."  *Id.*  Intrinsic acts don't implicate CRE 404(b) because they aren't "other" crimes, wrongs, or acts.  *Rojas*, ¶ 52.

Courts should therefore evaluate the admissibility of intrinsic evidence under CRE 401-403. *Rojas*, ¶ 52.

¶ 26    Conversely, extrinsic evidence is not directly related to the crime charged. *See People v. Quintana*, 882 P.2d 1366, 1372 (Colo. 1994), *abrogated on other grounds by, Rojas*. Extrinsic evidence involves conduct independent and different from the charged offense. *See id.* "If extrinsic evidence suggests bad character (and thus a propensity to commit the charged offense)," it is admissible only as provided by CRE 404(b) and after an analysis under *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). *Rojas*, ¶ 52. Under *Spoto*, evidence of acts that suggest bad character is admissible only if (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the prohibited intermediate inference that the defendant was acting in conformity with his bad character; and (4) the probative value of the evidence isn't substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318. But if the extrinsic evidence doesn't suggest bad character, CRE 404(b) is inapplicable, and its admissibility is governed by CRE 401-403. *Rojas*, ¶ 52.

## D. Analysis

¶ 27     Gonzalez argues that the August 7 video and associated frame of his face constituted extrinsic evidence under *Rojas* because they involved a separate alleged offense and a different alleged victim. He also asserts that the trial court erred by failing to conduct CRE 404(b) and *Spoto* analyses and that the evidence wasn't admissible under CRE 404(b) because it (1) suggested a bad character by showing him "entering a bedroom, lifting the covers, and filming A.B., including her crotch, while she was sleeping"; (2) allowed the jury to rely on it for propensity purposes; and (3) depicted the commission of attempted sexual exploitation of a child.  He also argues that the trial court erred by failing to give a limiting instruction for this evidence, and that the evidence should have been excluded based on the prosecution's failure to provide the requisite pretrial notice.

¶ 28     We conclude that the evidence was properly admitted because it was extrinsic evidence that wasn't barred by CRE 404(b), and the failure to give a limiting instruction wasn't obvious error and didn't prejudice Gonzalez.  We acknowledge that the trial court found that the evidence didn't implicate CRE 404(b), and that it didn't conduct

10

a *Spoto* inquiry. However, the record allows us to engage in this analysis. *See People v. Cousins*, 181 P.3d 365, 370 (Colo. App. 2007) ("A conviction will not be overturned on appeal when the trial court employed an erroneous standard in analyzing the admissibility . . . [if the] evidence [was] admissible, and the proper foundation [was] laid for its admission."); *People v. Martinez*, 36 P.3d 154, 158-60 (Colo. App. 2001) (conducting a CRE 404(b) analysis for the first time on appeal); *Brown*, ¶ 15 (we can affirm the trial court's ruling on any ground supported by the record). We also note that the court did make findings that addressed three of the four *Spoto* factors: (1) the evidence was relevant; (2) it logically related to the material fact of identity; and (3) the probative value wasn't substantially outweighed by the risk of unfair prejudice. Reviewing the record, we agree with the court's findings.

### 1. The Challenged Evidence

¶ 29 The August 7 video is one minute and five seconds long. It shows Gonzalez as he walks over to J.B. and A.B.'s shared bed, puts the phone down with the camera facing himself to plug in a different phone, picks up the phone that is recording and points the camera at the bed, lifts the covers from A.B., and puts the covers

11

back down. When Gonzalez lifts the covers, A.B. is visible from her upper torso to her upper thighs. She appears to be wearing a shirt and shorts or underwear. And the associated still frame taken from the video is of Gonzalez's face, part of his unclothed upper torso, and his hand raised against a blank wall.

### 2. Extrinsic or Intrinsic Evidence

¶ 30 First, and contrary to the trial court's finding, we conclude that this evidence was extrinsic to the charged offense. It didn't directly prove the charged offense. That is, evidence that Gonzalez lifted the covers from A.B. on August 7, 2017, didn't directly prove that he sexually assaulted J.B. on August 4, 17, and 28, and September 19 and 21 of 2017. And the acts shown in the video and frame didn't occur "contemporaneously" with the acts supporting the charged offense, as they occurred on a different day. Nor did they facilitate the commission of the charged offense. The People argue that the acts in the video and frame "facilitated *the proof of* the charge[d] crime's commission." But that isn't the test. The test is whether the other acts "facilitated the commission of" the charged offense, not the proof of it. *Rojas*, ¶ 52. And in this case, the fact

12

that Gonzalez lifted the covers from A.B. on one day didn't facilitate his commission of sexual assaults of J.B. on different days.

### 3.    CRE 404(b) and *Spoto*

¶ 31    Second, we conclude that the extrinsic evidence arguably implicated Gonzalez's bad character because it showed him entering a bedroom, lifting the covers, and filming the genital area of a young child while she was sleeping. Therefore, the evidence was governed by CRE 404(b) and admissible only after passing the four-prong test outlined in *Spoto*. *See Rojas*, ¶ 52.

¶ 32    "The first prong of the *Spoto* test is the easiest to satisfy." *Yusem v. People*, 210 P.3d 458, 464 (Colo. 2009). A material fact is one "that is of consequence to the determination of the action." CRE 401. "So long as the purposes for which the prior act evidence is offered are somehow probative of an ultimate fact, the first prong is satisfied." *Yusem*, 210 P.3d at 464. The August 7 video and associated frame related to at least one material fact: whether Gonzalez was the perpetrator in the sexual assault videos. *See*

*People v. Baker*, 178 P.3d 1225, 1231 (Colo. App. 2007) (identity is a material fact for purposes of a CRE 404(b) analysis).[1]

¶ 33     Regarding the second *Spoto* prong, the video and frame were logically relevant to the material fact of identity because, as a matter of logic, they had at least some tendency to make it more probable that Gonzalez was the individual performing the acts in the sexual assault videos. *See Yusem*, 210 P.3d at 464-65 (Evidence is logically relevant if it "has any tendency to make the existence of the material fact more or less probable than without the evidence."). The video and frame showed Gonzalez's face and hand in the same room where the sexual assaults of J.B. happened. The video also showed Gonzalez lifting the blanket to record the child beneath it, as had occurred in the sexual assault videos. And the evidence depicted events occurring at night, like the sexual

---

[1] The video and frame may also have been relevant to the material issue of intent in that they show conduct different than that depicted in the videos of J.B., indicating an intent to act differently with respect to J.B. *See People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994) (intent is a material fact that must be proven when the defendant denies having committed sexual assault on a child while in a position of trust).

assault videos.  The August 7 video was also found on the same SD card as the sexual assault videos and other pictures of Gonzalez.

¶ 34　　As to the third *Spoto* prong, the evidence was logically relevant, independent of any impermissible inference of bad character.  "The third prong of the *Spoto* test does not demand the absence of the inference but merely requires that the proffered evidence be logically relevant independent of that inference."  *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994).  The chain of logical inferences from the video and frame evidence flows not from Gonzalez's character but from the similarities between the August 7 video and the sexual assault videos and the differences between the August 7 video and the sexual assault videos that tie Gonzalez to the sexual assault videos (including that the August 7 video shows Gonzalez's face while the others don't).  *See People v. Morales*, 2012 COA 2, ¶ 31 (The requirement that the evidence be logically relevant independent of a propensity inference is satisfied "where there is 'similarity' between the charged and uncharged acts, showing a 'specific tendency' on the defendant's part." (quoting *People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009))).

¶ 35    Finally, with regard to the fourth *Spoto* prong, we conclude that the probative value of the August 7 video and frame wasn't substantially outweighed by the danger of unfair prejudice. Because this prong favors admissibility, we must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *Yusem*, 210 P.3d at 467. "[E]vidence is unfairly prejudicial only if it has an 'undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror.'" *People v. Allgier*, 2018 COA 122, ¶ 31 (quoting *People v. Dist. Ct.*, 785 P.2d 141, 147 (Colo. 1990)).

¶ 36    Because the central issue in the case was whether Gonzalez was the perpetrator in the sexual assault videos, the August 7 video and associated frame were highly probative. *See People v. Denhartog*, 2019 COA 23, ¶ 47 (Where the "central dispute" in the case was whether the defendant acted with the requisite intent, the prior act evidence, "which was directly relevant to the dispute, was highly probative."). By contrast, the evidence had minimal prejudicial impact because no conduct depicted in the video or

16

frame was by itself illegal, and the evidence "conveyed relatively mundane information when compared with the graphic evidence otherwise admitted at trial." *People v. Dean*, 2012 COA 106, ¶ 46, *aff'd*, 2016 CO 14; *see also People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002) (the introduction of evidence of prior incidents didn't violate CRE 403 because those incidents were "less serious, heinous, or egregious, than the three sexual assaults presented to the jury and were less likely to have an inflammatory effect"). While all relevant evidence is prejudicial in a broad sense, the evidence didn't create any unfair prejudice. *See People v. Griffiths*, 251 P.3d 462, 466-67 (Colo. App. 2010) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." (quoting *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002))).

¶ 37    Gonzalez argues that the prejudicial impact of this evidence "was grossly compounded by the absence of a limiting instruction." Because his attorney didn't ask the trial court to give a limiting instruction, we review his assertion for plain error. *People v. Griffin,*

224 P.3d 292, 298 (Colo. App. 2009).[2] "We will reverse only if [Gonzalez] shows that the court committed an obvious and substantial error that undermined the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction." *Id.*

¶ 38  We conclude that any alleged error in this context wasn't obvious because, "absent a special statutory requirement, the supreme court has consistently held that trial courts have no duty to give limiting instructions sua sponte." *Id.*  Rather, the onus is on the parties to request a limiting instruction. *See Rojas*, ¶ 27 ("If a court determines the evidence is admissible [under *Spoto*], the court must also, *upon request*, contemporaneously instruct the jurors of the limited purpose for which the evidence may be considered.") (emphasis added).  Gonzalez acknowledges this but asserts that his

---

[2] Though Gonzalez argues that his trial attorney didn't have any reason to request a limiting instructing once the court ruled that evidence wasn't subject to CRE 404(b), limiting instructions may be appropriate whenever, as in this case, evidence is admitted for a particular purpose. *See, e.g.*, *Vialpando v. People*, 727 P.2d 1090, 1096 (Colo. 1986); *People v. Schlehuber*, 2025 COA 50, ¶ 40; *People v. Brown*, 2022 COA 19, ¶¶ 60-62.  And we note that, when counsel argued that the evidence was inadmissible under CRE 404(b), he didn't argue in the alternative that, if the court found the evidence admissible under CRE 404(b), it should give a limiting instruction.

counsel didn't request a limiting instruction because "there was no need, much less a basis, to even discuss a limiting instruction" due to the trial court's ruling that the evidence didn't implicate CRE 404(b). Therefore, he claims that such a request would have been "futile." *See People v. Diefenderfer*, 784 P.2d 741, 750 (Colo. 1989) ("The law does not require a futile act."). But even if not subject to CRE 404(b), the evidence could be subject to a limiting instruction.

¶ 39 Nonetheless, we conclude that the absence of a limiting instruction didn't "undermine[] the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction." *Griffin*, 224 P.3d at 298. The August 7 video and associated frame were "so obviously relevant" for the legitimate purpose of proving that Gonzalez was the perpetrator in the sexual assault videos that there was "little danger that the jury relied on the less potent, prohibited inference that [Gonzalez] had acted in conformity with [his] poor character generally." *Id.* at 300.

¶ 40 Because the August 7 video and associated frame meet the foundational requirements of CRE 404(b) and *Spoto*, we conclude that the trial court didn't err by admitting this evidence.

### 4. Notice

¶ 41 Finally, citing CRE 404(b)(3) and section 16-10-301(4), C.R.S. 2025, Gonzalez contends that "the other act evidence should have been excluded based on the Prosecution's failure to provide the requisite pre-trial notice." We first note that, although Gonzalez filed a pretrial notice of and motion to exclude other act evidence under CRE 404(b), his attorney didn't object to the sufficiency of notice when the prosecutor first said she intended to introduce the August 7 video. The issue is therefore unpreserved, and we would normally review for plain error. *See Hagos*,¶ 14. But Gonzalez doesn't develop the argument beyond a single sentence or explain why the alleged lack of notice prejudiced him. "In light of the . . . cursory[] and undeveloped manner in which [Gonzalez] presents this . . . assertion, we decline to address it." *People v. Gingles*, 2014 COA 163, ¶ 29; *see also People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development . . . .")

### III. Disposition

¶ 42 The judgment is affirmed.

JUDGE GROVE and JUDGE SCHUTZ concur.